# AMENDED & RESTATED

# AGREEMENT OF LIMITED PARTNERSHIP

### FOR

## DOTCOM VENTURES, L.P.

## (FORMERLY ASCII VENTURES, L.P.)

### A CALIFORNIA LIMITED PARTNERSHIP

**EXHIBIT A**

# TABLE OF CONTENTS

PAGE

1.   DEFINITIONS..............................................................................................................1

    1.1    Accounting Period. ...............................................................................1

    1.2    The Act...................................................................................................1

    1.3    Affiliate.................................................................................................1

    1.4    Book Value. ..........................................................................................1

    1.5    Capital Account. ...................................................................................2

    1.6    Capital Commitment.............................................................................3

    1.7    Capital Transaction Gain or Loss........................................................3

    1.8    Code......................................................................................................4

    1.9    Contingent Loss. ..................................................................................4

    1.10   Earmarked Assets.................................................................................4

    1.11   Fiscal Quarter.......................................................................................4

    1.12   Fiscal Year. ..........................................................................................4

    1.13   Leverage...............................................................................................4

    1.14   Management Company. ........................................................................4

    1.15   Management Services Agreement........................................................4

    1.16   Money Market Investments..................................................................4

    1.17   Outstanding Leverage. .........................................................................4

    1.18   Participating Security...........................................................................4

    1.19   Partner..................................................................................................4

    1.20   Partnership Percentage. .......................................................................5

    1.21   Portfolio Securities..............................................................................5

    1.22   Preferred Limited Partner....................................................................5

    1.23   Preferred Limited Partnership Interest. ...............................................5

    1.24   Prioritized Payments and Adjustments. ..............................................5

    1.25   Profit Participation. .............................................................................5

    1.26   SBA......................................................................................................5

    1.27   Securities..............................................................................................5

    1.28   Treasury Regulations. ..........................................................................5

TABLE OF CONTENTS
(CONTINUED)

PAGE

2.   NAME; PRINCIPAL PLACE OF BUSINESS; SBIC ACT. ............................................... 5

2.1   Name; Principal Place of Business. ......................................................... 5

2.2   Conflict with SBIC Act. .......................................................................... 6

2.3   SBA as Third Party Beneficiary. ............................................................. 6

2.4   Provisions Required by the SBIC Act for Issuers of Participating
      Securities. .............................................................................................. 6

2.5   Incorporation by Reference. .................................................................... 6

3.   TERM OF PARTNERSHIP: ........................................................................................ 6

4.   PURPOSE OF THE PARTNERSHIP AND INVESTMENT RESTRICTIONS. ......................... 7

4.1   Purpose. ................................................................................................. 7

4.2   General Restrictions on the Partnership. .................................................. 7

5.   NAME AND ADMISSION OF PARTNERS; CAPITAL CONTRIBUTIONS; FAILURE TO
     CONTRIBUTE CAPITAL. ........................................................................................... 7

5.1   Name And Address. ................................................................................. 7

5.2   Admission of Additional Partners. ............................................................ 7

5.3   Admission of Preferred Limited Partners and Increased Commitments. ................. 8

5.4   Capital Accounts. .................................................................................... 8

5.5   Capital Contributions Of The Limited Partners. ........................................ 8

5.6   Capital Contributions Of The General Partner. ......................................... 9

5.7   Failure to Contribute Capital. .................................................................. 9

6.   MANAGEMENT. ..................................................................................................... 13

6.1   The General Partner. ............................................................................... 13

6.2   The Management Company; Management Fee. ......................................... 13

6.3   Activities of General Partner. .................................................................. 13

6.4   Restrictions on General Partner Activities. ............................................... 14

6.5   Regulatory Authority of the SBA. ............................................................ 15

6.6   Investment of Idle Funds. ........................................................................ 15

6.7   SBIC Act Investment Restrictions. .......................................................... 15

6.8   No Obligation to Obtain Position in Certain Investments. ........................ 15

6.9   Expenses. ............................................................................................... 15

TABLE OF CONTENTS
(CONTINUED)

PAGE

| | | | |
|---|---|---|---|
| | 6.10 | Liability of Limited Partners. | 16 |
| 7. | | CAPITAL ACCOUNTS AND ALLOCATIONS. | 16 |
| | 7.1 | Capital Accounts. | 16 |
| | 7.2 | Allocation of Capital Transaction Gain. | 16 |
| | 7.3 | Allocation of Capital Transaction Loss. | 17 |
| | 7.4 | Allocation of Net Income or Loss. | 17 |
| | 7.5 | Reallocation of Contingent Loss. | 17 |
| | 7.6 | Special Allocation Among Late Entering Limited Partners of Organization and Operating Expenses. | 17 |
| | 7.7 | Income Tax Allocations. | 17 |
| | 7.8 | Reduction of Carried Interest. | 18 |
| 8. | | WITHDRAWALS BY AND DISTRIBUTIONS TO THE PARTNERS. | 18 |
| | 8.1 | Interest. | 18 |
| | 8.2 | Mandatory Cash Tax Distributions. | 18 |
| | 8.3 | Discretionary Distributions. | 19 |
| | 8.4 | Pro Rata Distributions. | 19 |
| | 8.5 | Limited Partner Distributions. | 19 |
| | 8.6 | General Partner Distribution. | 19 |
| | 8.7 | Class of Securities Distributed. | 19 |
| | 8.8 | General Partner's Cost Basis Contribution. | 20 |
| | 8.9 | Deemed Realized Gain. | 20 |
| | 8.10 | Distributions of Securities Generally. | 20 |
| | 8.11 | Partners' Obligation to Repay or Restore. | 20 |
| | 8.12 | Withholding. | 20 |
| 9. | | INVESTMENT REPRESENTATION. | 21 |
| | 9.1 | Investment Representation of the Limited Partners. | 21 |
| | 9.2 | Qualifications of the Limited Partners. | 21 |

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

10.    TRANSFER OF PARTNERSHIP INTEREST; SPECIAL WITHDRAWAL RIGHT. .............................. 21

10.1    Transfer by General Partner. ............................................................................................ 21

10.2    Transfer by Limited Partner. ............................................................................................ 21

    10.3    Requirements for Transfer. .................................................................................... 22

    10.4    Substitution as a Limited Partner. .......................................................................... 23

    10.5    Special Withdrawal Right. ...................................................................................... 23

11.    TERMINATION OF PARTNERSHIP; FINAL DISTRIBUTION OF ASSETS. ...................................... 24

    11.1    Termination. ........................................................................................................... 24

    11.2    Distribution of Assets. ........................................................................................... 24

    11.3    Lookback Liability of General Partner to Return Excess Distributions................. 25

    11.4    Removal of the General Partner.............................................................................. 26

12.    MISCELLANEOUS............................................................................................................... 27

    12.1    Binding Effect. ....................................................................................................... 27

    12.2    Counterparts............................................................................................................ 27

    12.3    Headings. ................................................................................................................ 28

    12.4    Severability. ............................................................................................................ 28

    12.5    Valuation................................................................................................................. 28

    12.6    Books and Records. ................................................................................................ 28

    12.7    Reports and Meetings. ............................................................................................ 28

    12.8    Tax Returns and Tax Information............................................................................ 28

    12.9    Redemption and Withdrawal of Preferred Limited Partner. .................................. 29

13.    EXCULPATION AND INDEMNIFICATION. .............................................................................. 30

14.    AMENDMENT. ................................................................................................................... 30

15.    NOTICES............................................................................................................................ 30

16.    TAX STATUS. .................................................................................................................... 30

    16.1    Avoidance of Trade or Business Status. ................................................................. 30

    16.2    Foreign Partners. .................................................................................................... 31

17.    TAX MATTERS PARTNER.................................................................................................... 31

18.    POWER OF ATTORNEY. ...................................................................................................... 32

## TABLE OF CONTENTS
### (CONTINUED)

PAGE

19.    ARBITRATION...................................................................................................... 32

20.    RATIFICATION AND APPROVAL. ......................................................................... 32

## INDEX OF DEFINITIONS

| Term | Paragraph | Page |
|------|-----------|------|
| AAA Agreement | 5.2(a) | 8 |
| Accounting Period | 1.1 | 1 |
| Act | 1.2 | 1 |
| Affiliate | 1.3 | 1 |
| Book Value | 1.4 | 1 |
| Capital Account | 1.5 | 2 |
| Capital Commitment | 1.6 | 3 |
| Capital Transaction Gain or Loss | 1.7 | 3 |
| Certificate | 3 | 6 |
| Code | 1.8 | 4 |
| Contingent Loss | 1.9 | 4 |
| Defaulting Partner | 5.7(b) | 10 |
| Earmarked Assets | 1.10 | 4 |
| Excess Distribution Amount | 11.3(c) | 25 |
| Fiscal Quarter | 1.11 | 4 |
| Fiscal Year | 1.12 | 4 |
| General Partner | -- | 1 |
| General Partner Distributions | 11.3(d) | 25 |
| Leverage | 1.13 | 4 |
| Limited Partners | -- | 1 |
| Lookback Liability | 11.3(g) | 25 |
| Management Company | 1.14 | 4 |
| Management Fee | 6.2 | 13 |
| Management Services Agreement | 1.15 | 4 |
| Minimum Withdrawal Amount | 10.5(d) | 23 |
| Money Market Investments | 1.16 | 4 |
| Optionees | 5.7(b)(ii) | 10 |
| Outstanding Leverage | 1.17 | 4 |
| Participating Security | 1.18 | 4 |
| Partner | 1.19 | 4 |
| Partnership | -- | 1 |
| Partnership Percentage | 1.20 | 5 |
| Portfolio Securities | 1.21 | 5 |
| Preferred Limited Partner | 1.22 | 5 |
| Preferred Limited Partnership Interest | 1.23 | 5 |
| Prioritized Payments and Adjustments | 1.24 | 5 |
| Profit Participation | 1.25 | 5 |
| Remaining Portion | 5.7(b)(ii)(2) | 10 |
| SBA | 1.26 | 5 |
| SBIC Act | 2.2 | 6 |

| | | |
|---|---|---|
| Securities | 1.27 | 5 |
| TMP | 17 | 29 |
| Treasury Regulations | 1.28 | 5 |
| Unpurchased Remaining Portion | 5.7(b)(ii)(4) | 11 |

## DOTCOM VENTURES, L.P.
## (FORMERLY ASCII VENTURES, L.P.)
## AMENDED & RESTATED
## AGREEMENT OF LIMITED PARTNERSHIP

This Amended and Restated Limited Partnership Agreement of **DOTCOM VENTURES, L.P.** (formerly **ASCII VENTURES, L.P.**) (the "Partnership"), is entered into as of the 10th day of September, 1999, by **DOTCOM INVESTMENTS, LLC,** (formerly AV Management, LLC) a California limited liability company (the "General Partner") on behalf of itself and each of the persons listed as limited partners (the "Limited Partners") on Exhibit A to the Partnership's Amended and Restated Limited Partnership Agreement dated as of April 1, 1999 (the "Prior Agreement). The undersigned General Partner is executing this Amendment pursuant to power of attorney set forth in paragraph 18 of the Agreement with respect to all changes to the Prior Agreement, other than the changes to paragraph 10.5 which have been duly authorized by action by the General Partner and the requisite Limited Partners acting pursuant to paragraph 14 of the Agreement. Accordingly, the Prior Agreement is hereby amended and restated in its entirely as follows:

## 1. DEFINITIONS.

Unless the context requires otherwise, the following terms have the meanings specified in this paragraph:

**1.1  Accounting Period.** An Accounting Period shall be (i) a calendar year if there are no changes in the Partners' respective interests in the profits or losses of the Partnership during such calendar year except on the first day thereof, or (ii) any other period beginning on the first day of a calendar year, or any other day during a calendar year upon which occurs a change in such respective interests, and ending on the last day of a calendar year, or on the day preceding an earlier day upon which any change in such respective interest shall occur.

**1.2  The Act.** The California Revised Limited Partnership Act, as amended from time to time.

**1.3  Affiliate.** An affiliate of, or a party affiliated with, a specified party, including a party that directly, or indirectly through one or more intermediaries, controls, or is controlled by or is under common control with, the party specified.

**1.4  Book Value.** The Book Value with respect to any asset shall be the asset's adjusted basis for federal income tax purposes, except as provided below:

    **(a)**  The initial Book Value of any asset contributed by a Partner to the Partnership shall be the fair market value of such asset at the time of contribution, as determined by the General Partner.

    **(b)**  In the discretion of the General Partner, the Book Values of all Partnership assets may be adjusted to equal their respective fair market values, as determined by the General

Partner, and the resulting unrecognized gain or loss allocated to the Capital Accounts of the Partners as Capital Transaction Gain or Loss pursuant to paragraph 7 as of the following times: (A) the acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a de minimis capital contribution; and (B) the distribution by the Partnership to a Partner of more than a de minimis amount of Partnership assets, unless all Partners receive simultaneous distributions of either undivided interest in the distributed property or identical Partnership assets in proportion to their interests in the Partnership.

(c)    The Book Values of all Partnership assets shall be adjusted to equal their respective fair market values, as determined by the General Partner, and the resulting unrecognized gain or loss allocated to the Capital Accounts of the Partners as Capital Transaction Gain or Loss pursuant to paragraph 7, as of the following times: (A) the date the Partnership is liquidated within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(g); and (B) the termination of the Partnership pursuant to the provisions of this Agreement.

(d)    The Book Values of Partnership assets shall be increased or decreased to the extent required under Treasury Regulation Section 1.704-1(b)(2)(iv)(m) in the event that the adjusted tax basis of Partnership assets are adjusted pursuant to Code Sections 732, 734, or 743.

(e)    The Book Value of a Partnership asset shall be adjusted by the depreciation, amortization, or other cost recovery deductions, if any, taken into account by the Partnership with respect to such asset in computing Net Income or Loss or Capital Transaction Gain or Loss as specified by Treasury Regulation Section 1.704-1(b)(2)(iv)(g).

1.5    **Capital Account.** The Capital Account of each Partner shall consist of its original capital contribution, (i) increased by any additional capital contributions, its share of income or gain that is allocated to it pursuant to this Agreement, and the amount of any Partnership liabilities that are assumed by it or that are secured by any Partnership property distributed to it, and (ii) decreased by the amount of any distributions to or withdrawals by it, its share of expense or loss that is allocated to it pursuant to this Agreement, and the amount of any of its liabilities that are assumed by the Partnership or that are secured by any property contributed by it to the Partnership. The foregoing provision and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulation paragraph 1.704-1(b)(2)(iv), and shall be interpreted and applied in a manner consistent with such Regulations. In the event the General Partner shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed in order to comply with such Regulations, the General Partner may, in its sole discretion, make such modification, *provided* that it is not likely to have more than an insignificant effect on the total amounts distributable to any Partner pursuant to Section 7 and Section 11.

One Capital Account shall be maintained for the General Partner in its capacity as general partner of the Partnership, and another wholly separate Capital Account shall be maintained for any capital contributed to the Partnership by the General Partner or its affiliates in the capacity as a Limited Partner of the Partnership. Any reference in this Agreement to the "General Partner's Capital Account," the "Capital Account of the General Partner" or the like shall refer to the

Capital Account maintained for the General Partner in its capacity as General Partner of the Partnership. In addition, for purposes of this Agreement, allocations and distributions made to the General Partner or an Affiliate of the General Partner in its capacity as a Limited Partner shall be treated as having been made to a Limited Partner and, accordingly, shall not be treated as having been made to or received by the General Partner.

**1.6    Capital Commitment.** A Partner's Capital Commitment shall mean the amount that such Partner has agreed to contribute to the capital of the Partnership as set forth opposite such Partner's name on Exhibit A hereto. The Partnership's Committed Capital shall equal the sum of the aggregate Capital Commitments of all Partners.

**1.7    Capital Transaction Gain or Loss.** Capital Transaction Gain or Loss shall be an amount computed for each Accounting Period as of the last day thereof that is equal to the Partnership's taxable income or loss for such Accounting Period, determined in accordance with paragraph 703(a) of the Code (for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code paragraph 703(a)(1) shall be considered taxable income or loss), with the following adjustments:

      **(a)**    Any income of the Partnership that is exempt from federal income tax and not otherwise taken into account in computing Capital Transaction Gain or Loss pursuant to this paragraph shall be added to such taxable income or loss;

      **(b)**    Any expenditures of the Partnership described in Code paragraph 705(a)(2)(B) or treated as Code paragraph 705(a)(2)(B) expenditures pursuant to Treasury Regulation paragraph 1.704-1(b)(2)(iv)(i) and not otherwise taken into account in computing Profit or Loss pursuant to this paragraph shall be subtracted from such taxable income or loss;

      **(c)**    Gain or loss resulting from any disposition of a Partnership asset with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of the asset disposed of rather than its adjusted tax basis;

      **(d)**    The difference between the gross fair market value of all Partnership assets and their respective Book Values shall be added to such taxable income or loss in the circumstances described in paragraph 1.4;

      **(e)**    Items which are specially allocated pursuant to paragraphs 7.4 and 7.6 hereof shall not be taken into account in computing Capital Transaction Gain or Loss;

      **(f)**    The amount of any Deemed Gain or Deemed Loss on any securities distributed in kind shall be added to or subtracted from (as the case may be) such taxable income or loss; and

      **(g)**    To the extent not otherwise taken into account in the computation of the Partnership's taxable income or loss for such Accounting Period, Capital Transaction Gain shall be reduced (or Capital Transaction Loss increased, as the case may be) by the amount of Prioritized Payments and Profit Participation paid or allocated to the SBA during such period.

**1.8    Code.** The Internal Revenue Code of 1986, as amended from time to time.

**1.9    Contingent Loss.** That part of the General Partner's share of Partnership Capital Transaction Loss or Net Loss that is allocated to the Limited Partners' Capital Accounts pursuant to paragraph 7.5.

**1.10    Earmarked Assets.** Earmarked Assets shall have the meaning set forth in the SBIC Act.

**1.11    Fiscal Quarter.** The Fiscal Quarters of the Partnership shall begin on January 1, April 1, July 1, and October 1, and end on March 31, June 30, September 30, and December 31, respectively.

**1.12    Fiscal Year.** The Partnership's first Fiscal Year shall begin on the date hereof and end on December 31, 1997. Thereafter, the Partnership's Fiscal Year shall commence on January 1 of each year and end on December 31 of such year or, if earlier, the date the Partnership terminated during such year.

**1.13    Leverage.** Leverage shall have the meaning set forth in the SBIC Act.

**1.14    Management Company.** DOTCOM Management, Inc., a California limited liability company.

**1.15    Management Services Agreement.** The Management Services Agreement of even date herewith in the form of Exhibit F.

**1.16    Money Market Investments.** (1) Direct obligations of, or obligations guaranteed as to principal and interest by, the United States, which mature within 15 months from the date of the investment; or (2) repurchase agreements with federally insured institutions, with a maturity of seven days or less; provided, that the securities underlying the repurchase agreements must be direct obligations of, or obligations guaranteed as to principal and interest by, the United States and the securities must be maintained in a custodial account at a federally insured institution; or (3) certificates of deposit with a maturity of one year or less, issued by a federally insured institution; or (4) a deposit account in a federally insured institution, subject to a withdrawal restriction of one year or less; or (5) a checking account in a federally insured institution.

**1.17    Outstanding Leverage.** Outstanding Leverage shall mean the total amount of outstanding securities (including, but not limited to Participating Securities), issued by the Partnership which qualify as Leverage and which have not been redeemed by or repaid for purposes of the SBIC Act.

**1.18    Participating Security.** Participating Security shall have the meaning set forth in the SBIC Act.

**1.19    Partner.** Partner shall refer to the General Partner and the Limited Partners and shall not include any Preferred Limited Partner except as otherwise expressly provided herein.

**1.20    Partnership Percentage.**  The Partnership Percentage for each Partner shall be determined by dividing the sum of (i) the amount of each Partner's capital contribution plus (ii) the unpaid portion of such Partner's capital commitment by the sum of (y) the capital contribution of all of the Partners plus (z) the sum of the unpaid amount of all Partners' capital commitments.  The sum of the Partners' Partnership Percentages shall be one hundred percent (100%).    For purposes of computing any Partner's Partnership Percentage, any capital contribution or capital commitment made by a Defaulting Partner whose Partnership Percentage has been reduced to zero percent (0%) shall be disregarded.

**1.21    Portfolio Securities.** All Securities then held by the Partnership excluding Money Market Investments.

**1.22    Preferred Limited Partner.**  Preferred Limited Partner shall mean the SBA, in its capacity as a Preferred Limited Partner, or any person holding a Participating Security issued by the Partnership.

**1.23    Preferred Limited Partnership Interest.**  Preferred Limited Partnership Interest shall mean a interest which qualifies as a Participating Security.

**1.24    Prioritized Payments and Adjustments.**  Payments and Adjustments shall have the meaning set forth in the SBIC Act.

**1.25    Profit Participation.**  Profit Participation shall have the meaning set forth in the SBIC Act.

**1.26    SBA.**  SBA shall mean the United States Small Business Administration.

**1.27    Securities.**  Securities of every kind and nature and rights and options with respect thereto, including stocks, notes, bonds, debentures, evidences of indebtedness, and other business interests of every type, including interests in partnerships, joint ventures, proprietorships, and other business entities.

**1.28    Treasury Regulations.**    Treasury Regulations shall be the Income Tax Regulations promulgated under the Code, as such Regulations may be amended from time to time.

**2.    NAME; PRINCIPAL PLACE OF BUSINESS; SBIC ACT.**

**2.1    Name; Principal Place of Business.**  Prior to the date of this Agreement, the name of the Partnership was **ASCII VENTURES, L.P.**  Effective as of the date of this Agreement, the name of the Partnership shall be **DOTCOM VENTURES, L.P.** and the General Partner is hereby authorized to take all necessary action to reflect such name on the records of the Secretary of State of the State of California.  The principal place of business of the Partnership shall be at such place as determined from time to time by the General Partner.  The registered office of the Partnership in California shall be located at 3945 Freedom Circle, Suite 740, Santa Clara, California 95054.

**2.2    Conflict with SBIC Act.** The provisions of this Agreement shall be interpreted to the fullest extent possible in a manner consistent with the Small Business Investment Act of 1958, as amended, and the rules and regulations promulgated hereunder by the SBA, as in effect from time to time (the "SBIC Act"). In the event of any conflict between any provision of the Agreement and the provisions of the SBIC Act (including, without limitation, any conflict with respect to the rights of the SBA or the Partners hereunder), the provisions of the SBIC Act shall control.

**2.3    SBA as Third Party Beneficiary.** In the event that the SBA is not a party to the Agreement, the SBA shall be deemed an express third party beneficiary of the provisions of the Agreement to the extent of the rights of the Preferred Limited Partners and the SBA hereunder and under the Act, and the SBA shall be entitled to enforce such provisions (including, without limitation, the obligations of each Partner to make capital contributions to the Partnership) for the benefit of the Preferred Limited Partners and for its benefit, as if the SBA were a party hereto.

**2.4    Provisions Required by the SBIC Act for Issuers of Participating Securities.**

**(a)** The provisions of 13 C.F.R. § 107.1140 are hereby incorporated by reference in this Agreement as if fully set forth herein.

**(b)** The Partnership and the Partners hereby consent to the exercise by the SBA of all of the rights of the SBA under 13 C.F.R. § 107.1140, and agree to take all actions which the SBA may require in accordance with 13 C.F.R. § 107.1140.

**(c)** This paragraph 2.4 shall be in effect at any time that the Partnership has outstanding Participating Securities or owns Earmarked Assets, and shall not be in effect at any time that the Partnership neither has outstanding Participating Securities nor owns Earmarked Assets.

**(d)** Nothing in this paragraph 2.4 shall be construed to limit the ability or authority of the SBA to exercise its regulatory authority over the Partnership as a licensed small business investment company under the SBIC Act.

**2.5    Incorporation by Reference.** The provisions of SBA Annex PS, in the form attached to this Agreement as Exhibit PS, are incorporated in this Agreement with the same force and effect as if fully set forth herein. The provisions of this Agreement shall be interpreted to the fullest extent possible in a manner consistent with the provisions of SBA Annex PS. In the event of any conflict between any provision of SBA Annex PS and any other provision of this Agreement, the provisions of SBA Annex PS shall prevail

**3.    TERM OF PARTNERSHIP:** The term of the Partnership commenced on September 3, 1997 and shall continue until the later of (i) the date ten (10) years thereafter or (ii) the date two (2) years after the repayment of all Leverage obtained from the SBA, unless sooner dissolved as provided in paragraph 11.1 below or extended as set forth in the next sentence. The term may be extended at the sole discretion of the General Partner for up to three one-year periods.

4.    PURPOSE OF THE PARTNERSHIP AND INVESTMENT RESTRICTIONS.

**4.1    Purpose.**  The Partnership is being organized solely for the purpose of operating as a small business investment company under the SBIC Act, and shall have the power, responsibilities, and be subject to the limitations provided in the SBIC Act.

**4.2    General Restrictions on the Partnership.**

(a)    The Partnership may not invest in any portfolio company in an amount in excess of twenty percent (20%) of the Partnership's Committed Capital without the approval of Two-Thirds in Interest of the Limited Partners.

(b)    The Partnership will not borrow money, issue promissory notes and other negotiable or non-negotiable instruments (other than limited partnership interests), purchase securities on margin, sell securities short, engage in risk arbitrage transactions or invest in commodities, interests in oil, gas or mineral rights or real property.

(c)    Subject to the SBIC Act and SBA Annex PS, the Partnership may reinvest any proceeds realized on the sale of Securities in the Partnership's venture capital portfolio in (i) Money Market Investments and (ii) Securities other than Money Market Investments, provided that the Partnership's cumulative investment in Securities other than Money Market Investments over the term of the Partnership shall not exceed one hundred percent (100%) of the aggregate amount of the Partnership's Committed Capital.

5.    NAME AND ADMISSION OF PARTNERS; CAPITAL CONTRIBUTIONS; FAILURE TO CONTRIBUTE CAPITAL.

**5.1    Name And Address.**  The name and address of the General Partner and each Limited Partner, the amount of such Partner's Capital Commitment to the Partnership, and such Partner's Partnership Percentage are set forth on Exhibit A hereto.  The General Partner shall cause Exhibit A to be amended from time to time to reflect the admission of any new Partner, the withdrawal or substitution of any Partner, the transfer of interests among Partners, receipt by the Partnership of notice of any change of address of a Partner, or the change in any Partner's Capital Commitment or Partnership Percentage.  An amended Exhibit A shall supersede any prior Exhibit A and become a part of this Agreement.  A copy of the most recent amended Exhibit A shall be kept on file at the principal office of the Partnership.  The General Partner shall deliver a copy of any such amended Exhibit A to each Limited Partner as soon as reasonably practicable.

**5.2    Admission of Additional Partners.**

    **(a)**    Except pursuant to the terms of that certain Assignment, Assumption and Amendment Agreement dated April 1, 1999 by and between the Partnership, the General Partner, ASCII of America, Inc., CSK Venture Capital Co. Ltd. and various other parties (the "AAA Agreement") or as provided in paragraphs 5.7(b)(iv) and 10.4, an additional person may be admitted as a Partner only with the consent of the General Partner and Two-Thirds in Interest of the Limited Partners.

    **(b)**    Each additional person admitted as a Partner shall (i) execute and deliver to the Partnership a counterpart of this Agreement or otherwise become bound by the terms of this Agreement and (ii) contribute that portion of its Capital Commitment which is equal to the portion of their respective Capital Commitments contributed to date by the Partnership's previously admitted Limited Partners.

    **5.3    Admission of Preferred Limited Partners and Increased Commitments.** The Partnership may, from time to time after the date hereof, admit one or more Preferred Limited Partners with the consent of only the General Partner under the following terms and conditions.

    **(a)**    Each Preferred Limited Partner shall execute and deliver to the Partnership an instrument in the form attached hereto as Exhibit A-1, or other form satisfactory to the General Partner and the Preferred Limited Partner, evidencing such Preferred Limited Partner's agreement to be bound by and comply with the terms and provisions of the Agreement as if such Preferred Limited Partner were an original signatory to the Agreement, and setting forth such Preferred Limited Partner's name, address and Capital Commitment.

    **(b)**    Each Preferred Limited Partner shall be admitted to the Partnership as of the date that such instrument is executed by such Preferred Limited Partner and the General Partner. Each Preferred Limited Partner shall pay on the date of its admission to the Partnership, a capital contribution equal to 100% of the amount of its Capital Commitment.

    **(c)**    At the time that any Preferred Limited Partner makes an additional capital contribution to the Partnership it shall execute an instrument as provided in paragraph 3.3.(a) setting forth the amount of such additional capital contribution, and its Capital Commitment shall be increased by the amount of such capital contribution.

    **5.4    Capital Accounts.** An individual Capital Account shall be maintained for each Partner.

    **5.5    Capital Contributions Of The Limited Partners.**

    **(a)**    Each Limited Partner's Capital Commitment shall be contributed in cash installments as specified by the General Partner upon fifteen (15) days' prior written notice. No Limited Partner shall be required to make capital contributions in excess of such Limited Partner's Capital Commitment.

**(b)** Notwithstanding paragraph 5.5(a), in no event shall any Limited Partner be required to contribute capital in respect of such Limited Partner's Capital Commitment in amounts in excess of the following:

| Period | Maximum Percentage of Capital Commitment Which May Be Called |
|---|---|
| Prior to April 1, 1999 | 25% |
| Prior to April 1, 2000 | 50% |
| Prior to April 1, 2001 | 75% |

The restrictions of this paragraph 5.5(b) shall be subject to the SBIC Act and shall in no way limit SBA's authority to require Partners to contribute capital in respect of their Capital Commitment.

**(c)** Notwithstanding the Partnership's authority to enforce obligations of each Limited Partner to make capital contributions as set forth in paragraph 5.5, if the Partnership has Outstanding Leverage or owns Earmarked Assets, then the Partnership shall not enter into any agreement (whether oral or written), release or settlement with any Partner or take any action under any provision of this Agreement, which defers, reduces or terminates the obligations of any such Partner to make contributions to the capital of the Partnership, or commence any legal proceedings or arbitration, which seeks any such deferral, reduction or termination of such obligation, and no such agreement, release, settlement or action taken under any provision of this Agreement shall be effective with respect to the Partnership or any such Partner, without the prior written consent of the SBA. If the General Partner has given the SBA thirty (30) days prior written notice of any proposed action under the provisions of the Agreement with respect to any default by a Limited Partner and the General Partner shall not have received written notice from the SBA that it objects to such proposed action within such thirty (30) day period, then SBA shall be deemed to have consented to such proposed action.

**5.6    Capital Contributions Of The General Partner.** The General Partner shall contribute capital to the Partnership in an amount equal to one-ninety-ninth (1/99) of the amount contributed by the Limited Partners on each date on which any Limited Partner makes a contribution. The General Partner may elect, in its discretion, to make its capital contribution by delivery of a promissory note in the form attached hereto as Exhibit B.

**5.7    Failure to Contribute Capital.**

**(a)** The Partnership shall be entitled to enforce the obligations of each Partner (or a permitted assignee of a Limited Partner pursuant to paragraph 10) to make the contributions to capital and the Partnership shall have all remedies available at law or equity in the event any such contribution is not so made. If any legal proceedings relating to the failure of a Limited Partner to make such a contribution are commenced, such Limited Partner shall pay all costs and

expenses incurred by the Partnership, including attorneys' fees, in connection with such proceedings.

(b)    In addition, but in each instance subject to SBA Annex PS to the extent applicable, if any Limited Partner (the "Defaulting Partner") fails to make any installment of Capital Contribution when due, such Partner shall be in default, and the General Partner may, in its sole discretion, elect to enforce the provisions of subparagraphs 5.7(b)(i) and (ii) below.

(i)    Should the General Partner, in its sole discretion, elect to exercise the provisions of this paragraph 5.7(b)(i), such Defaulting Partner shall pay the interest on the amount of the contribution to the Partnership then due at an interest rate equal to the floating commercial rate of interest publicly announced by Bank of America (or its successors), San Francisco, California as its prime rate plus four percent (4%) per annum, such interest to accrue from the date the contribution to the Partnership was required to be made pursuant to paragraph 5.5 hereof until the date the contribution is made by such defaulting Limited Partner. The accrued interest shall be paid by such defaulting Limited Partner to the Partnership upon payment of such contribution. The accrued interest so paid shall not be treated as an additional contribution to the capital of the Partnership, but shall be deemed to be income to the Partnership. Until such time as the unpaid contribution and accrued interest thereon shall have been paid by such defaulting Limited Partner, the General Partner may elect to withhold any or all distributions to be made to such defaulting Limited Partner pursuant to Section 8 hereof.

(ii)    Should the General Partner, in its sole discretion, elect to exercise the provisions of this paragraph 5.7(b)(ii), the other Limited Partners and the General Partner (the "Optionees") shall have the right and option to acquire the Partnership interest of any Defaulting Partner, as follows:

(1)    If any Defaulting Partner defaults in making such contribution, the General Partner shall immediately notify such Defaulting Partner of such default. If the default continues for ten (10) or more days after notice of the default, the General Partner shall notify the Optionees of the default within twenty (20) days after the expiration of the aforesaid ten (10) day notice period. Such notice shall advise each Optionee of the portion and the price of the Defaulting Partner's interest available to it. The portion available to each Optionee shall be that portion of the Defaulting Partner's interest that bears the same ratio to the Defaulting Partner's entire interest as each Optionee's Partnership Percentage bears to the aggregate Partnership Percentages of all the Limited Partners other than the Defaulting Partner. The aggregate price for the Defaulting Partner's interest shall be the lesser of (A) an amount equal to (1) the balance that would have been in the Defaulting Partner's Capital Account as of the due date of the additional contribution if the Partnership had terminated on such date and all allocations necessary to determine the closing Capital Accounts of the Partners under paragraph 11.2 had been effected less (2) any distributions to the Defaulting Partner under this Agreement which are effected from and after such due date to the date of purchase of Defaulting Partner's interest hereunder, or (B) the aggregate amount of the Defaulting Partner's capital contributions less any distributions made to the Defaulting Partner (with such distributions being valued at fair market value as of the date of the distribution) through the date of purchase of Defaulting Partner's interest hereunder. The price for each Optionee shall be prorated according to the

portion of the Defaulting Partner's interest purchased by each such Optionee. The option granted hereunder shall be exercisable at any time within forty-five (45) days after the date of the notice from the General Partner.

(2)    If any Optionee does not exercise its option within said forty-five (45) day period provided in paragraph 5.7(b)(ii)(1) above, the General Partner shall immediately notify the other Optionees, who shall have the right and option ratably among them to acquire the portion of the Defaulting Partner's interest not so acquired (the "Remaining Portion") within forty-five (45) days after the date of the notice specified in this paragraph on the same terms as provided in paragraph 5.7(b)(ii)(1).

(3)    The amount of the Remaining Portion not acquired by the Optionees pursuant to paragraph 5.7(b)(ii)(2) above, may be acquired by the General Partner within forty-five (45) days of the expiration of the forty-five (45) day period specified in paragraph 5.7(b)(ii)(2) above, on the same terms as set forth in paragraph 5.7(b)(ii)(1) above.

(4)    The amount of the Remaining Portion not acquired by the Optionees and the General Partner may, if the General Partner deems it in the best interests of the Partnership, be sold to any other corporations, trusts, partnerships or individuals on terms not more favorable to such parties than those applicable to the Optionees' option. In lieu of the foregoing, the General Partner may, if the General Partner deems it in the best interests of the Partnership, cause the Partnership to (x) repurchase on the same terms applicable to the Optionee's option some or all of the Remaining Portion not acquired by the Optionees and the General Partner (the "Unpurchased Remaining Portion") and (y) issue to any other individual or entity (on terms not more favorable to such parties than those applicable to the Optionee option) a Limited Partnership interest in the Partnership substantially identical in all respects to the Unpurchased Remaining Portion purchased pursuant to clause (x) hereof; provided, however that the Capital Account balance of such newly admitted Limited Partner shall be determined without reference to the Capital Account of the Defaulting Partner. Such newly admitted Limited Partner shall be deemed, solely for purposes of computing such Limited Partner's Partnership Percentage, to have contributed to the capital of the Partnership the sum of the amount the Defaulting Partner had previously contributed to the Partnership with respect to the Unpurchased Remaining Portion that such Limited Partner's interest replaced plus any amounts actually contributed to the Partnership by such newly admitted Limited Partner. If not all of the Remaining Portion is sold as provided herein, then (A) the Defaulting Partner shall be entitled only to receive an amount equal to the portion of its Capital Account balance representing the unsold Remaining Portion (determined at the time of such first failure to make one of the capital contributions) such amount to be payable upon the termination of the Partnership, without interest, (B) notwithstanding the provisions of paragraph 7, items of Net Income and Loss and Capital Transaction Gain and Loss shall be allocated to the Capital Account of the Defaulting Partner so as to cause its positive Capital Account balance to equal at all times the amount it is entitled to receive pursuant to clause (A) hereof and (C) the Defaulting Partner's Partnership Percentage shall be reduced to zero percent (0%).

(5)    The price due from each of the General Partner and the Optionees shall, at the separate elections of the General Partner and each Optionee, be payable to

the Defaulting Partner either in cash or by a non-interest bearing, nonrecourse note in the form of Exhibit C, due six (6) months after the date of termination of the Partnership. Each such note shall be secured by the portion of the Defaulting Partner's Partnership interest purchased by its maker pursuant to a security agreement in the form of Exhibit D and shall be enforceable by the Defaulting Partner only against the security.

(6)    Upon the exercise of any option or any other purchase hereunder, each Optionee or other purchaser shall be obligated (A) to contribute to the Partnership that portion of the additional capital then due from the Defaulting Partner equal to the percentage of the Defaulting Partner's interest purchased by such Optionee or other purchaser and (B) to pay the same percentage of any further contributions otherwise due from such Defaulting Partner. Such Optionee's or other purchaser's Capital Commitment shall be appropriately adjusted to reflect such obligation plus any capital previously contributed with respect to the purchased interest.

(7)    Notwithstanding any other provision of this paragraph 5.7(b), no option described in this paragraph 5.7(b) shall be exercised without the prior written approval of the SBA (or the passage of thirty (30) days from the date of notice to the SBA of an Optionee's intention to exercise any such other option, which passage of time will be deemed consent by the SBA). If the General Partner has given the SBA thirty (30) days prior written notice of any proposed action under the provisions of the Agreement with respect to any default by a Limited Partner and the General Partner shall not have received written notice from the SBA that it objects to such proposed action within such thirty (30) day period, then the SBA shall be deemed to have consented to such proposed action.

(8)    Notwithstanding any provision in the Agreement to the contrary, the General Partner and the Limited Partners shall be obligated to contribute any amount of their respective current Capital Commitments, not previously contributed to the Partnership, upon the earlier of (i) the completion of the liquidation of the Partnership or (ii) one year from the commencement of such liquidation, if and to the extent that the other assets of the Partnership have not been sufficient to permit as of such time the redemption of all Outstanding Leverage, the payment of all amounts due with respect to the Outstanding Leverage as provided in the SBIC Act, and the payment of all other amounts owed by the Partnership to the SBA.

(c)    Notwithstanding any provision in the Agreement to the contrary (except as expressly provided in this paragraph 5.7(c)), in the event that the Partnership is subject to restricted operations (as such terms is used in the SBIC Act) and prior to the liquidation of the Partnership the SBA requires the General Partner and the Limited Partners to contribute any amount of their respective Capital Commitments not previously contributed to the Partnership, the obligation to make such contributions shall not be subject to any conditions set forth in this Agreement other than limitations on the amount of capital which a Partner is obligated to contribute within any specified time period. No Limited Partner or General Partner shall have any right to delay, reduce or offset any capital contribution obligation to the Partnership called under this paragraph 5.7 by reason of any counterclaim or right of offset by such Partner or the Partnership against the SBA or any Preferred Limited Partner.

6.    **MANAGEMENT.**

6.1    **The General Partner.** The General Partner shall have the sole and exclusive control of the management of the Partnership and the conduct of the business of the Partnership, and the Limited Partners shall not participate in management. The General Partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a general partner in a limited partnership formed under the laws of the State of California, and shall have authority to take any action or make any decision, on behalf of the Partnership, hereunder to carry out all of the objects and purposes of the Partnership as set forth in paragraph 4.1 hereof, and to perform all acts and enter into and perform all contracts and other undertakings which it may deem reasonably necessary or advisable or incidental thereto. The General Partner shall, so long as it remains the General Partner of the Partnership, comply with the requirements of the SBIC Act, as in effect from time to time. So long as the Partnership is licensed as a small business investment company under the SBIC Act, the sole purpose of the General Partner shall be operating as General Partner of the Partnership, except if the General Partner ceases to be the General Partner as provided in this Agreement or the SBIC Act.

6.2    **The Management Company; Management Fee.** The Partnership shall engage the Management Company to provide certain management services to the Partnership pursuant to the terms of the Management Services Agreement attached as Exhibit F in exchange for payment of amounts set forth therein (the "Management Fee"). Subject to the SBIC Act, the Management Company shall be delegated certain rights and powers for the purpose of carrying out the goals and purposes, and managing the business of the Partnership. However, the General Partner will retain overall management responsibility for all activities of the Partnership and will have the exclusive right and power to manage and operate the business of the Partnership, to review and approve investment decisions, and to determine its business policies. Notwithstanding anything to the contrary in this Agreement, no management fee shall be paid to the Management Company except as permitted by the SBA under the SBIC Act.

6.3    **Activities of General Partner.**

(a)    The General Partner and the managing members of the General Partner, for so long as each shall remain a manager of the General Partner, shall devote so much of their time to the affairs of the Partnership as in good faith the conduct of the Partnership's business shall reasonably require; provided, however, that during the term of the Partnership, the General Partner shall only engage in the management and operation of the Partnership and any other entity licensed as a small business investment company by the SBA.

(b)    From and after the date of this Agreement, but subject to paragraph 6.3(a), the General Partner may be involved in the formation or management of any new venture capital oriented partnership or entity with substantially the same investment objectives as the Partnership upon the earlier of (i) written consent of Two-Thirds in Interest of the Limited Partners, (ii) the date on which funds equal to at least seventy percent (70%) of the Partnership's Committed Capital have been invested, committed for investment, reserved for investment in the existing portfolio of companies of the Partnership, or reserved to fund future Partnership expenses, including the Management Fee, or (iii) the date four (4) years from the commencement of the

Partnership. Notwithstanding the foregoing, KLM Capital and its Affiliates shall not be limited in any way by the provisions of this paragraph 6.3(b).

(c) The Partners expressly agree and understand that the General Partner, or its members, employees, agents or Affiliates may have investment responsibilities for, engage in business with, perform advisory, managerial, or other services for, or act as a director, trustee, partner or other administrative official of other individuals or entities, whether or not Portfolio Companies. The General Partner (subject to paragraph 6.3(a)) or its members, employees, agents, or Affiliates may receive compensation for such services or participate in profits derived in such entities, and the Partnership will not share in any such compensation or profits.

(d) The General Partner (subject to paragraph 6.3(a)) or its members, employees, agents or Affiliates may buy, sell, invest in, or otherwise deal with any Securities or other investments, whether or not in Portfolio Companies, for its or their own accounts, or for accounts of individuals or other entities or venture capital oriented entities with which they may be associated as to which it or they exercise investment responsibility or render investment advice, without liability or accountability in damages or otherwise to the Partnership, or any of its Partners.

### 6.4    Restrictions on General Partner Activities.

(a) The Management Company, the General Partner and their members or employees who are involved in the Partnership will not buy securities from or sell securities to the Partnership without the consent of (i) Two-Thirds in Interest of the Limited Partners and (ii) the SBA. Each member or employee of the General Partner or Management Company must disclose to all Partners any material ownership or profit interest directly held in any entity with which the Partnership proposes to make an initial investment.

(b) **Voting Rights of the Limited Partners.** Neither the Partnership nor the General Partner will:

(i) make any investments in new portfolio companies (other than follow-on investments in existing portfolio companies) after the ninth anniversary of the Initial Closing Date, without the approval of a majority in interest of the Limited Partners;

(ii) reinvest the proceeds of its portfolio company investments into new portfolio companies without the unanimous approval of the Partners; provided, however, the Partnership may invest such proceeds in short term investments pending distribution.

(iii) transfer its General Partnership interest without the written consent of a majority in interest of Limited Partners and unless the tax treatment of the Partnership will be maintained; and,

(iv) voluntarily withdraw from the Partnership as General Partner, without the consent of Two-Thirds in Interest of Limited Partners, unless at the time there is at least one additional general partner and unless the tax treatment of the Partnership will be maintained.

**6.5    Regulatory Authority of the SBA.** The Partners acknowledge that, in addition to the rights of the SBA under this Agreement in the SBA's capacity as a Preferred Limited Partner, the SBA also has regulatory authority over the Partnership as a licensed small business investment company under the provisions of the SBIC Act. The Partners further acknowledge that the SBA exercises its regulatory authority over the Partnership under the SBIC Act independent of and separate from its rights and actions in its capacity as a Preferred Limited Partner. Actions taken by the SBA pursuant to such regulatory authority shall not be deemed to be actions taken in the SBA's capacity as a Preferred Limited Partner of the Partnership.

**6.6    Investment of Idle Funds.** The Partnership shall invest all idle funds as required under Section 107.530 and other applicable portions of the SBIC Act.

**6.7    SBIC Act Investment Restrictions.** Notwithstanding any other provision of this Agreement, all investments by the Partnership shall comply with the SBIC Act.

**6.8    No Obligation to Obtain Position in Certain Investments.** While the General Partner is restricted by the SBIC Act and paragraph 6.3(a) to the management of one or more small business investment companies and hence, may not conduct direct investing activities, the General Partner or its members, employees, agents or Affiliates shall not have any obligation to acquire for or offer to the Partnership a position in any investment which any such person or entity may acquire. The Partnership and its Partners shall have no first refusal, co-investment, or other rights in respect of any such investment, in any fees, profits or other income earned or derived therefrom; provided, however, in no event shall the General Partner or its members, employees, agents or Affiliates contemporaneously take a position in any investment which the Partnership is then acquiring on terms more favorable than terms secured by the Partnership.

**6.9    Expenses.**

(a)    From the Management Fee, the Management Company shall bear all normal operating expenses incurred in connection with the management of the Partnership, except for those expenses borne directly by the Partnership as set forth in the immediately following subparagraphs and elsewhere herein. Such normal operating expenses to be borne by the Management Company shall include, without limitation, expenditures on account of salaries, wages, travel, entertainment, and other expenses of the employees of the Partnership, the General Partner or the Management Company, rentals payable for space used by the General Partner, the Partnership or the Management Company, bookkeeping services and equipment, and expenses incurred in investigating and evaluating investment opportunities and in managing investments of the Partnership.

(b)    The Partnership shall bear all costs and expenses incurred in the holding, purchase, sale or exchange of Securities (whether or not ultimately consummated), including, but not by way of limitation, private placement fees, finder's fees, interest on borrowed money, real property or personal property taxes on investments, brokerage fees, legal fees, audit and accounting fees, extraordinary consulting fees relating to investments or proposed investments, taxes applicable to the Partnership on account of its operations, fees incurred in connection with the maintenance of bank or custodian accounts, and all expenses incurred in connection with the

registration of the Partnership's Securities under applicable securities laws or regulations. The Partnership shall also bear expenses incurred by the General Partner in serving as the tax matters partner, the cost of liability and other insurance premiums, all out-of-pocket expenses of preparing and distributing reports to Partners, out-of-pocket costs associated with Partnership meetings, all legal and accounting fees relating to the Partnership and its activities, all costs and expenses arising out of the Partnership's indemnification obligation pursuant to this Agreement, and all expenses that are not normal operating expenses.

(c)     The General Partner shall cause to be paid out of Partnership funds the organizational expenses incurred in connection with the formation of the General Partner and the Partnership (in an amount not to exceed an aggregate of $125,000), those other costs and expenses described in the preceding paragraph and in the Management Services Agreement as being the responsibility of the Partnership, and all liquidation costs and expenses incurred by the General Partner or the Management Company in connection with the liquidation of the Partnership's assets pursuant to paragraph 11 hereof.

**6.10    Liability of Limited Partners.** No Limited Partner shall be liable for any debts or obligations of the Partnership, including obligations in respect of indemnification provided in paragraph 13.2, in excess of its unpaid Capital Commitment. Limited Partners have no right to participate in the management of the Partnership, or to act or vote with respect to matters relating to the Partnership, except as specifically provided under California law or in this Agreement.

## 7.    CAPITAL ACCOUNTS AND ALLOCATIONS.

**7.1    Capital Accounts.** A Capital Account shall be maintained on the Partnership's books for each Partner. In the event any interest in the Partnership is transferred or assigned in accordance with the terms of this Agreement, the transferee or assignee shall succeed to the Capital Account of the transferor or assignor to the extent it relates to the transferred or assigned interest.

**7.2    Allocation of Capital Transaction Gain.** Except as hereinafter provided in this Article 7 and subject to SBA Annex PS and the SBIC Act, Capital Transaction Gain of the Partnership for each Accounting Period shall, after effecting the allocations provided in paragraph 7.4 for such Accounting Period, be allocated as follows:

(a)     Twenty percent (20%) of the Partnership's Capital Transaction Gain shall be allocated to the Capital Account of the General Partner; provided, however, that if the Capital Accounts of one or more of the Limited Partners contain a Contingent Loss, an amount of such Capital Transaction Gain that would otherwise be allocated entirely to the Capital Account of the General Partner pursuant to this subparagraph shall instead be allocated one percent (1%) to the Capital Account of the General Partner and ninety-nine percent (99%) to the Capital Accounts of the Limited Partners (in proportion to the amount of Contingent Loss in their respective Capital Accounts) until the Limited Partners receive up to an aggregate amount equal to the previously allocated Contingent Loss that has not been restored by prior allocations pursuant to this proviso and then any remaining such Capital Transaction Gain shall be allocated to the Capital Account of the General Partner.

**(b)** The remaining eighty percent (80%) of the Partnership's Capital Transaction Gain shall be allocated to the Capital Accounts of all of the Partners (General and Limited) pro rata in proportion to their respective Partnership Percentages.

**7.3** **Allocation of Capital Transaction Loss.** Except as hereinafter provided in this Article 7 and subject to SBA Annex PS and the SBIC Act, Capital Transaction Loss of the Partnership for each Accounting Period shall be allocated as follows:

**(a)** Twenty percent (20%) of the Partnership's Capital Transaction Loss shall be allocated to the Capital Account of the General Partner.

**(b)** The remaining eighty percent (80%) of such Capital Transaction Loss shall be allocated to the Capital Accounts of all of the Partners (General and Limited) pro rata in proportion to their respective Partnership Percentages.

**7.4** **Allocation of Net Income or Loss.** Except as hereinafter provided in this Article 7 and subject to SBA Annex PS and the SBIC Act, Net Income or Loss of the Partnership for an Accounting Period shall be allocated to the Capital Accounts of all Partners (General and Limited) pro rata in proportion to their respective Partnership Percentages.

**7.5** **Reallocation of Contingent Loss.** If for any Accounting Period after the Partnership's Capital Transaction Gain or Loss and Net Income or Loss has been allocated pursuant to paragraphs 7.2, 7.3 and 7.4, the Capital Account Balance of the General Partner has been reduced below one percent (1%) of the total Capital Account balances of all the Partners of the Partnership, then an amount of Capital Transaction Loss and, to the extent necessary, Net Loss (collectively, the "Contingent Loss") shall be reallocated from the General Partner's Capital Account to the Capital Accounts of all the Limited Partners pro rata in proportion to their respective Partnership Percentages so that the General Partner's Capital Account Balance is not reduced below one percent (1%) of the total Capital Account balances of all the Partners. For purposes of this paragraph, the balance in the Capital Account of the General Partner shall be computed without regard to any amounts attributable to any interest as a Limited Partner held by the General Partner.

**7.6** **Special Allocation Among Late Entering Limited Partners of Organization and Operating Expenses.** If additional persons are admitted to the Partnership as Limited Partners subsequent to the date of its formation, then organizational costs, fees (including the management fee), and expenses of the Partnership that are allocated to the Partners on or after the effective date of such admission shall be allocated first to such new Partners to the extent necessary to cause such persons to be treated with respect to such items as if they had been Partners from the commencement of the Partnership's term.

**7.7** **Income Tax Allocations.**

**(a)** Except as otherwise provided in this paragraph or as otherwise required by the Code and the rules and Treasury Regulations promulgated thereunder, a Partner's distributive

share of Partnership income, gain, loss, deduction, or credit for income tax purposes shall be the same as is entered in the Partner's Capital Account pursuant to this Agreement.

(b)    In accordance with Code Section 704(c) and the Treasury Regulations thereunder, income, gain, loss, and deduction with respect to any asset contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners so as to take account of any variation between the adjusted basis of such property to the Partnership for federal income tax purposes and its initial Book Value.

(c)    In the event the Book Value of any Partnership asset is adjusted pursuant to the terms of this Agreement, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under Code Section 704(c) and the Treasury Regulations thereunder.

**7.8    Reduction of Carried Interest.** To the greatest extent practicable, commencing with the first Accounting Period after the date on which the General Partner ceases to allocate income or loss to its "Class C Members" pursuant to the terms of its Amended and Restated Operating Agreement (the "Class C Date"), the allocations of Capital Transaction Gain or Loss otherwise required to be made twenty percent (20%) to the General Partner and eighty percent (80%) to all Partners pursuant to this Article 7 shall instead be made seventeen percent (17%) to the General Partner and eighty-three percent (83%) to all Partners.  However, to facilitate an equitable transition from a twenty percent (20%) carried interest to a seventeen percent (17%) carried interest on net aggregate profits enjoyed by the Partnership after the Class C Date, Capital Transaction Losses allocated after the Class C Date shall continue to be allocated twenty percent (20%) to the General Partner to the extent that any previous allocations of Capital Transaction Gain made twenty percent (20%) to the General Partner have not been previously offset by an equal amount of Capital Transaction Losses.  Similarly, if Contingent Losses have previously been allocated in connection with an allocation of Capital Transaction Loss which would, but for the application of paragraph 7.5, been allocated twenty percent (20%) to the General Partner, the restoration of such Contingent Losses shall be carried out by pursuant to paragraph 7.2(a) by reference to twenty percent (20%) allocations.  To the greatest extent practicable, distributions pursuant to Article 8 shall similarly be adjusted.

**8.    WITHDRAWALS BY AND DISTRIBUTIONS TO THE PARTNERS.** Subject to the SBA Annex PS and the SBIC Act, all distributions and withdrawals, other than distributions in connection with liquidation of the Partnership, shall be made in accordance with this Article 8.

**8.1    Interest.** No interest shall be paid to any Partner on account of its interest in the capital of, or on account of its investment in, the Partnership.

**8.2    Mandatory Cash Tax Distributions.** Each Partner shall be paid in cash within ninety (90) days after the end of each fiscal year during the original term of the Partnership an amount equal to the excess, if any of (a) the aggregate state and federal income tax liability such Partner would have incurred as a result of such Partner's ownership of an interest in the Partnership for all prior fiscal years, calculated as if (i) such Partner were a natural person

resident in the state of California and taxable at the maximum rates provided for under applicable federal and California state income tax laws, and (ii) allocations from the Partnership were the sole source of income and loss for such Partner, over (b) all prior cash distributions made pursuant to this paragraph 8.2 or paragraph 8.3; provided that (x) the General Partner shall not be required to make any such distribution if the total amount to be distributed to all Partners is less than $200,000 and (y) in no event may the distribution made pursuant to this paragraph 8.2 exceed such Partner's allocable share of the Partnership's Net Capital Transaction Gain (reduced by the Partnership's Net Loss).

**8.3    Discretionary Distributions.**  The General Partner may in its sole discretion make additional distributions of cash or distribute in kind marketable securities, with such distributions being made twenty percent (20%) to the General Partner and eighty percent (80%) to all Partners (General and Limited) pro rata in proportion to their respective Partnership Percentages; provided, however, that after giving effect to the proposed distribution, (A) the aggregate fair market value of the Partnership's Portfolio Securities (valued as provided in paragraph 12.5) would not be less than one hundred and twenty percent (120%) of the aggregate cost basis of the Portfolio Securities then held by the Partnership, (B) the Capital Account of the General Partner will not be less than one percent (1%) of the total Capital Accounts of all the Partners of the Partnership determined after adjusting such balance for the amount of such distribution and any Capital Transaction Gain or Loss deemed recognized by the Partnership pursuant to paragraph 8.9, and (C) all Contingent Losses allocated to the Capital Accounts of the Limited Partners pursuant to paragraph 7.5 have been restored by subsequent allocations of gain.

**8.4    Pro Rata Distributions.**  At any time, the General Partner may in its sole discretion distribute cash or Securities to all Partners pro rata in proportion to their Partnership Percentages, provided that, immediately after the proposed distribution, the Capital Account balance of the General Partner will not be less than one percent (1%) of the Capital Account balances of all the Partners of the Partnership.

**8.5    Limited Partner Distributions.**  At any time, the General Partner may in its sole discretion, distribute cash or Securities to all Limited Partners (other than any Preferred Limited Partner) pro rata in proportion to their Partnership Percentages.

**8.6    General Partner Distribution.**  At any time, the General Partner may, in its sole discretion, distribute cash or Securities to the General Partner provided that, immediately after the proposed distribution the Capital Account balance of the General Partner (as computed without regard to any such balance created as a result of any interest as a Limited Partner held by such General Partner and as determined after adjusting such balance for the amount of such distribution and any Capital Transaction Gain or Loss deemed realized by the Partnership pursuant to paragraph 8.9 as a result thereof) will not be less than twenty and eight-tenths percent (20.8%) of the aggregate Capital Account balances of all the Partners.

**8.7    Class of Securities Distributed.**  Whenever more than one type of Securities is being distributed in kind in a single distribution or whenever more than one class of Securities of a portfolio company (or a portion of a class of such Securities having a tax basis per share or unit different from other portions of such class) are distributed in kind by the Partnership, each

Partner shall receive its ratable portion of each type, class or portion of such class of Securities distributed in kind.

    **8.8**    **General Partner's Cost Basis Contribution.**  In order to maintain the Partners' proportionate share of Partnership capital concurrent with any distribution in kind of Securities pursuant to paragraph 8.3, the General Partner, at its election, shall either (i) execute and deliver to the Partnership concurrently with such distribution a promissory note and security agreement in the form of Exhibits E and E-1 attached hereto, the principal amount of such promissory note to be equal to twenty percent (20%) of the Partnership's cost basis in the Securities distributed to all Partners; or (ii) pay over to the Partnership in cash the amount described in the preceding clause (i).

    **8.9**    **Deemed Realized Gain.**  Immediately prior to any distribution in kind of Securities or other asset pursuant to any provision of this Agreement, the difference between the fair market value and the Book Value of any such Securities or other assets distributed shall be allocated to the Capital Account of the Partners as a Capital Transaction Gain or Loss.

    **8.10**    **Distributions of Securities Generally.**  Notwithstanding anything contained in this Agreement, if any party would be distributed Securities in excess of the percentage of such issue which it may lawfully own or control, the General Partner shall vary the method of distribution in an equitable manner so as to avoid such excessive ownership or control.

    **8.11**    **Partners' Obligation to Repay or Restore.**  Except as provided in paragraph 11.3 or as required by law, no Partner shall be obligated at any time to repay or restore to the Partnership all or any part of any distribution made to it from the Partnership.

    **8.12**    **Withholding.**  The Partnership shall at all times be entitled to make payments with respect to any Limited Partner in amounts required to discharge any obligation of the Partnership to withhold or make payments to any governmental authority with respect to any federal, state, local or other jurisdictional tax liability of such Limited Partner arising as a result of such Limited Partner's interest. To the extent each such payment satisfies an obligation of the Partnership to withhold with respect to any distribution to a Limited Partner on which the Partnership did not withhold or with respect to any Limited Partner's allocable share of the income of the Partnership, each such payment shall be deemed to be a loan by the Partnership to such Limited Partner (which loan shall be deemed to be immediately due and payable) and shall not be deemed a distribution to such Limited Partner. The amount of such payments made with respect to such Limited Partner, plus interest, on each such amount from the date of each such payment until such amount is repaid to the Partnership at an interest rate per annum equal to the prime rate, from time to time in effect of Bank of America (or its successors), San Francisco, California, shall be repaid to the Partnership by (i) deduction from any distributions made to such Limited Partner pursuant to this Agreement or (ii) earlier payment by such Limited Partner to the Partnership, in each case as determined by the General Partner in its discretion. The General Partner may, in its discretion, defer making distributions to any Limited Partner owing amounts to the Partnership pursuant to this paragraph 8.11 until such amounts are paid to the Partnership and shall in addition exercise any other rights of a creditor with respect to such amounts.

9.    INVESTMENT REPRESENTATION.

9.1    **Investment Representation of the Limited Partners.**  This Agreement is made with each of the Limited Partners in reliance upon each Limited Partner's representation to the Partnership, which by executing this Agreement each Limited Partner hereby confirms, that its interest in the Partnership is to be acquired for investment, and not with a view to the sale or distribution of any part thereof, and that it has no present intention of selling, granting participation in, or otherwise distributing the same, and each Limited Partner understands that its interest in the Partnership has not been registered under the Securities Act and that any transfer or other disposition of the interest may not be made without registration under the Securities Act or pursuant to an applicable exemption therefrom.  Each Limited Partner further represents that it does not have any contract, undertaking, agreement, or arrangement with any person to sell, transfer, or grant participations to such person, or to any third person, with respect to its interest in the Partnership.

9.2    **Qualifications of the Limited Partners.**  Each Limited Partner represents that it is an "accredited investor" within the meaning of that term as defined in Regulation D promulgated under the Securities Act.

10.    TRANSFER OF PARTNERSHIP INTEREST; SPECIAL WITHDRAWAL RIGHT.

10.1    **Transfer by General Partner.**  The General Partner shall not sell, assign, mortgage, pledge or otherwise dispose of its interest in the Partnership or in its capital assets or property without the prior written consent of (i) a Majority In Interest of the Limited Partners, and (ii) SBA.

10.2    **Transfer by Limited Partner.**

(a)    No Limited Partner shall sell, assign, pledge, mortgage, or otherwise dispose of or transfer its interest in the Partnership without the prior written consent of the General Partner.  Notwithstanding the foregoing, after compliance with the transfer requirements of paragraph 10.3, a Limited Partner may sell, assign, pledge, mortgage, or otherwise dispose of or transfer its interest in the Partnership without such consent (a) to any entity directly or indirectly holding eighty percent (80%) or more of the interests of the Limited Partner or any entity of which eighty percent (80%) or more of the beneficial ownership are held directly or indirectly by such entity, including any entity of which the Limited Partner holds, directly or indirectly, eighty percent (80%) or more of the beneficial ownership; (b) pursuant to a merger, plan of reorganization, sale or pledge of, or other general encumbrance on all or substantially all of the Limited Partner's assets; (c) as may be required by any law or regulation; (d) to another Limited Partner; (e) by testamentary disposition or intestate succession, or (f) to a trust, profit sharing plan or other entity controlled by, or for the benefit of, such Limited Partner or one or more family members.  A change in any trustee or fiduciary of a Limited Partner shall not be considered to be a transfer, sale, assignment, mortgage, pledge or other disposition under this paragraph 10.2.

     **(b)**    Notwithstanding any other provision of this Agreement, no transfer of an interest in the Partnership may be made without the prior written approval of the SBA to the extent such approval is required by the SBIC Act.

     **(c)**    Notwithstanding any other provision of this Agreement, a Preferred Limited Partner (including the SBA in its capacity as a Preferred Limited Partner) may assign to a designee (including any trust, or trustee, for a trust, established pursuant to the SBIC Act) all or part of its right to receive any distribution or payment from the Partnership with respect to its Preferred Limited Partnership Interest. Upon receipt of written notice from the Preferred Limited Partner, the Partnership shall pay any such assigned distribution or payment directly to such designee. Any assignment made by a Preferred Limited Partner pursuant to this paragraph 10.2(c) shall not be deemed an assignment of a partnership interest or the substitution of such designee as a Partner, and shall not be deemed to give such designee any rights or interest in the Partnership as a Partner in the Partnership.

    **10.3**    **Requirements for Transfer.** No transfer or other disposition of the interest of a Limited Partner shall be permitted until the General Partner shall have received an opinion of counsel satisfactory to it (or waived such requirement) that the effect of such transfer or disposition would not:

     **(a)**    result in the Partnership's assets being considered, in the opinion of counsel for the Partnership, as "plan assets" within the meaning of ERISA or any regulations proposed or promulgated thereunder;

     **(b)**    result in the termination of the Partnership's tax year under Section 708(b)(1)(B) of the Code;

     **(c)**    result in violation of the Securities Act or any comparable state law;

     **(d)**    require the Partnership to register as an investment company under the Investment Company Act of 1940, as amended;

     **(e)**    require the Partnership, the General Partner, or any member of the General Partner to register as an investment adviser under the Investment Advisers Act of 1940, as amended;

     **(f)**    result in a termination of the Partnership's status as a partnership for tax purposes;

     **(g)**    result in a violation of any law, rule, or regulation by the Limited Partner, the Partnership, the General Partner, or any partner of the General Partner;

     **(h)**    cause the Partnership to be deemed to be a "publicly traded partnership" as such term is defined in Section 7704(b) of the Code;

     **(i)**    result in violation of the SBIC Act or restrict the amount of leverage available to the Partnership under the SBIC Act.

Such legal opinion shall be provided to the General Partner by the transferring Limited Partner or the proposed transferee. Any costs associated with such opinion shall be borne by the transferring Limited Partner or the proposed transferee. Upon request the General Partner will use its good faith diligent efforts to provide any information possessed by the Partners and reasonably requested by a transferring Limited Partner to enable it to render the foregoing opinion.

     **10.4  Substitution as a Limited Partner.** Subject to the SBIC Act to the extent applicable, a transferee of a Limited Partner's interest pursuant to this Section 10 shall become a substituted Limited Partner only with the consent of the General Partner and only if such transferee (a) elects to become a substituted Limited Partner and (b) executes, acknowledges and delivers to the Partnership such other instruments as the General Partner may deem necessary or advisable to effect the admission of such transferee as a substituted Limited Partner, including, without limitation, the written acceptance and adoption by such transferee of the provisions of this Agreement. No assignment by a Limited Partner of its interest in the Partnership shall release the assignor from its liability to the Partnership pursuant to paragraph 5.4 hereof, provided that if the assignee becomes a Limited Partner as provided in this paragraph 10.4, the assignor shall thereupon so be released (in the case of a partial assignment, to the extent of such assignment).

### 10.5  Special Withdrawal Right.

     **(a)**    Except as provided in this paragraph 10.5, no Limited Partner shall have the right to withdraw from the Partnership.

     **(b)**    Notwithstanding any provision of this Agreement to the contrary, each Limited Partner admitted to the Partnership pursuant to the terms of the AAA Agreement may elect to withdraw from the Partnership, at the time and in the manner hereinafter provided, if the Partnership has not been licensed by SBA as a "small business investment company" on or before December 31, 1999.

     **(c)**    Subject to paragraph 10.5(f) below, a Limited Partner's election to withdraw pursuant to Paragraph 10.5(b) must be received by the General Partner on or before March 31, 2000.

     **(d)**    Each withdrawing Limited Partner shall be entitled to receive within one hundred twenty (120) days after the date of such withdrawal an amount equal to the lesser of (i) two (2) times the amount of capital actually contributed by such Limited Partner to the Partnership (excluding any interest assumed by such Limited Partner pursuant to the AAA Agreement), but in no event less than the Minimum Withdrawal Amount, or (ii) such Limited Partner's capital account balance (including any capital account balance related to any interest assumed by such Limited Partner pursuant to the AAA Agreement). The "Minimum Withdrawal Amount" shall be the product obtained by multiplying $250,000 by a fraction, the numerator of which is such withdrawing Limited Partner's Capital Commitment and the denominator of which is the sum of the Capital Commitment's of all Limited Partners admitted pursuant to the terms of the AAA Agreement.

(e)     Any distribution or payment to a withdrawing Limited Partner pursuant to this paragraph 10.5 may, in the sole discretion of the General Partner, be made in cash, in Securities (valued in accordance with paragraph 12.5), in the form of a promissory note, or any combination thereof; provided, however, that in the event that the payment due under this paragraph 10.5 is the Minimum Withdrawal Amount, then such payment shall be in cash. The terms of any such promissory note shall include interest at the prime rate quoted by Citibank (or its successor) plus two percent (2%) and a term of at least three (3) years; provided, that the Partnership shall be required to repay a portion of the principal of such note on the occasion of each cash distribution made to the Partners in an amount generally proportionate to the ratio the principal balance bears to the aggregate capital account balances of all Partners on such date. The General Partner shall use its best efforts to maximize the amount paid to such withdrawing Limited Partner in cash and Securities, subject to the reasonable liquidity needs of the Partnership and the illiquid nature of the Partnership's portfolio securities.

(f)     Notwithstanding any provision of this paragraph 10.5 to the contrary, the right of withdrawal set forth in this paragraph 10.5 shall expire immediately upon receipt by the Partnership of notice that it has been licensed by SBA as a "small business investment company."

## 11.    TERMINATION OF PARTNERSHIP; FINAL DISTRIBUTION OF ASSETS.

### 11.1    Termination.

(a)     The Partnership shall terminate on the earlier of (i) the expiration of the term set forth in Article 3, or (ii) ninety (90) days after the bankruptcy, liquidation, or withdrawal of the General Partner, unless a Majority in Interest of the Limited Partners consent to continue the Partnership and to elect a replacement for the General Partner within such ninety (90) day period; provided, however, that termination pursuant to clause (ii) shall be subject to SBA consent to the extent required under the SBIC Act.

(b)     Upon the termination date of the Partnership as provided in this paragraph 11.1, the affairs of the Partnership shall be wound up and the Partnership liquidated in accordance with Section 15683 et seq. of the Act.

### 11.2    Distribution of Assets.

(a)     The closing Capital Accounts of all the Partners shall be computed as of the date of final dissolution as if the date of final dissolution were the last day of an Accounting Period, and then adjusted in the following manner:

(i)     All assets and liabilities of the Partnership shall be valued as of the date of final dissolution.

(ii)     The Partnership's assets as of the date of final dissolution shall be deemed to have been sold at their fair market values and the resulting profit or loss shall be allocated to the Partners' Capital Accounts in accordance with the provisions of Article 7.

(b)    Distributions in liquidation may be made in cash or in kind or partly in cash and partly in kind.  The General Partner shall use its best judgment as to the most advantageous time for the Partnership to sell investments or to make distributions in kind.  All cash and each Security distributed in kind after the date of final dissolution of the Partnership shall be distributed ratably in accordance and in proportion to the Partners' positive Capital Account balance.  Each Security so distributed shall be subject to reasonable conditions and restrictions necessary or advisable in order to preserve the value of such security or for legal reasons.  Notwithstanding the foregoing, in the event of the liquidation of the Partnership pursuant to the SBIC Act, the Preferred Limited Partnership Interests shall be senior in priority for all purposes to all other partnership interests (or other equity interests) in the Partnership to the extent of the amount determined, with respect to each Preferred Limited Partnership Interest, as provided in the SBIC Act.

**11.3    Lookback Liability of General Partner to Return Excess Distributions.**

(a)    If after effecting the distributions provided for in this Article 11, the Excess Distribution Amount (as that term is defined below) is greater than zero, then the General Partner shall contribute to the capital of the Partnership cash equal to the Excess Distribution Amount.

(b)    For purposes of this paragraph 11.3:

(i)    The General Partner Target Amount shall be calculated as follows:

(1)    First, the Partnership's aggregate Capital Transaction Gain for all accounting periods shall be netted against the Partnership's aggregate Capital Transaction Loss for all accounting periods and the result shall be multiplied by twenty and eight-tenths percent (20.8%).  The resulting product shall be considered a positive number if such aggregate Capital Transaction Gain exceeded aggregate Capital Transaction Loss and a negative number if such aggregate Capital Transaction Loss exceeded aggregate Capital Transaction Gain.

(2)    Second, the Partnership's aggregate Net Income for all accounting periods shall be netted against the Partnership's aggregate Net Loss for all accounting periods and the result shall be multiplied by one percent (1%).  The result shall be considered a positive number if such aggregate Net Income exceeded such aggregate Net Loss and a negative number if such aggregate Net Loss exceeded such aggregate Net Income;

(3)    Third, the amount computed in clause (1) shall be added to the amount computed in clause (2);

(4)    The amount of aggregate General Partner Target Amount shall be appropriately adjusted to reflect any special allocations of items of Net Income or Loss or Capital Transaction Gain or Loss made to the General Partner pursuant to Article 7.

(c)    The "Excess Distribution Amount" shall equal the lesser of (A) the amount by which the General Partner Distributions (as defined below) exceed the sum of the

General Partner Target Amount plus the aggregate contributions made to the Partnership (excluding for this purpose the amount of notes delivered and executed for the benefit of the Partnership by the General Partner pursuant to paragraph 8.8) by the General Partner or (B) the amount of General Partner Distributions;

(d)    "General Partner Distributions" shall equal the sum of all cash and in-kind distributions received by the General Partner net of the amount of any notes contributed to the Partnership by the General Partner pursuant to paragraph 8.8;

(e)    All in-kind distributions shall be valued as provided in paragraph 12.5 as of the date of the date of the distribution; and

(f)    Only distributions made to the General Partner in its capacity as general partner of the Partnership shall be considered for purposes of the foregoing computations and determinations (such distributions shall, however, in no way be construed so as to include amounts paid or otherwise received by the General Partner or its Affiliate pursuant to paragraph 6 and under the Management Service Agreement).

(g)    If the assets of the General Partner are insufficient to satisfy the contribution obligation of the General Partner required by such paragraph 11.3(a) (hereinafter the "Lookback Liability"), no members or former members of the General Partner will in any event be obligated either to recontribute to the Partnership (on behalf of the General Partner or as a result of being a member of the General Partner) pursuant to this paragraph 11.3 or contribute to the General Partner (to provide amounts to fund the General Partner's obligation pursuant to this paragraph 11.3) an amount in excess of such member's pro rata share of Lookback Liability. For purposes of the preceding sentence, a member's pro rata share of such obligation shall be determined based on the aggregate amount of distributions (cash and in-kind) received by such member from the General Partner (other than any distribution or payment of management fees received by the General Partner or its Affiliates) and shall be calculated such that the sum of the pro rata shares of all members and former members of the General Partner equals the amount of the Lookback Liability. The General Partner shall keep such records as are necessary to determine each individual member's pro rata share of the Lookback Liability.

(h)    Any amounts contributed to the Partnership pursuant to this paragraph 11.3 shall be redistributed in accordance with the provisions of paragraph 11.2.

### 11.4    Removal of the General Partner.

(a)    Subject to SBA approval, if necessary, the General Partner may be removed as general partner for cause, upon a vote of at least a Two-Thirds in Interest of the Limited Partners. For purposes of this paragraph 11.4, cause for removal of the General Partner shall mean any action or failure to act by the General Partner which has been determined by final judicial determination of a court of competent jurisdiction to constitute a circumstance which would, had any Partner filed the requisite petition, be grounds for dissolution of the Partnership pursuant to Section 15682(b) of the Act.

(b)    In the event of a removal of the General Partner pursuant to paragraph 11.4(a), a Majority of the Limited Partners shall within 120 days of such removal elect a new general partner, or the Partnership shall be dissolved in accordance with Article 11.   The admission of such new general partner to the Partnership shall be subject to approval by the SBA, if necessary.

(c)    In the event of a removal of the General Partner pursuant to paragraph 11.4(a), the former General Partner shall not have any rights or powers of a general partner, but shall be treated for purposes of this Agreement as a Limited Partner with a Capital Account balance equal to the former General Partner's Capital Account on the date of removal and a Partnership Percentage determined in accordance with the following formula: (i) five percent (5%), *plus* (ii) one percent (1%) for each year or portion thereof from the commencement of the Partnership until the date of the removal of the former General Partner.  In no event shall the former General Partner's Partnership Percentage exceed twenty percent (20%).  The Partnership Percentages of the other Limited Partners shall be adjusted on a pro rata basis to reflect the foregoing. Except to the extent of its original one percent (1%) Capital Commitment, the former General Partner shall have no interest in investments made by the Partnership after the date such partner is removed and shall have no obligation to contribute any additional capital to the Partnership.  The successor General Partner shall cause Exhibit A to be amended to reflect all necessary changes resulting from this paragraph 11.4(c).

(d)    Removal of the General Partner, except pursuant to the terms of this Agreement, shall entitle the General Partner to receive, in cash compensation, damages for all direct and indirect economic consequences of such removal, including, but not limited to, damages for all lost profits.

(e)    The parties agree to take all reasonably necessary or appropriate actions to give effect to the provisions of this paragraph 11.4, including without limitation, execution of an amendment to this Agreement consistent with this paragraph 11.4.

12.   MISCELLANEOUS.

12.1   **Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective permitted successors and assigns.

12.2   **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

12.3   **Headings.** The article or paragraph titles or captions contained in this Agreement are for convenience only and shall not be deemed a part of this Agreement.

12.4   **Severability.** Whenever possible, the provisions of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be unenforceable or invalid under said applicable law, such provision

shall be ineffective only to the extent of such unenforceability or invalidity, and the remaining provisions of this Agreement shall continue to be binding and in full force and effect.

**12.5    Valuation.** Subject to the specific standards set forth below, the valuation of Securities and other assets and liabilities under this Agreement shall be at fair market value. The Partnership hereby adopts the Valuation Guidelines described in paragraph III of Appendix III to Part 107 of those regulations promulgated by the SBA and published in the Federal Register on April 8, 1994. Assets held by the Partnership shall be valued not less often than annually (or more often, as the SBA may require), and shall be valued not less often than semi-annually (or more often, as the SBA may require) at any time that the Partnership has Outstanding Leverage. Subject to the SBIC Act, the General Partner has sole responsibility for determining the value of the Securities held by the Partnership. Except as may be required under applicable Treasury Regulations, no value shall be placed on the goodwill or the name of the Partnership in determining the value of the interest of any Partner or in any accounting among the Partners.

**12.6    Books and Records.** Full and complete books and records of the Partnership shall be kept and maintained at all times for the Partnership at its offices or at such other place or places as the General Partner from time to time may determine. Except as otherwise provided in this Agreement, the Partnership books and records shall be maintained in accordance with generally accepted accounting principles consistently applied.    All Partners and their representatives shall at all reasonable times have access to the books and records of the Partnership for the purpose of inspecting or copying the same.

**12.7    Reports and Meetings.** The General Partner will provide Limited Partners with (i) quarterly reports consisting of unaudited financial statements, and a list, status report and valuation of each of the Partnership's investments, promptly following the end of each of the first three fiscal quarters, and (ii) annual financial statements audited by PricewaterhouseCoopers or another firm of similar standing, including an income statement, balance sheet and statement of changes in Partners' Capital Accounts, and a list, status report and valuation of each of the Partnership's investments, within 90 days after the end of each fiscal year. In addition, the General Partner will hold an annual meeting with the Limited Partners to review the operations of the Partnership and its portfolio companies. In preparing the reports required under this paragraph, the General Partner will value the Partnership's assets quarterly, and, in the case of dissolution of the Partnership, as of the date of dissolution of the Partnership.

**12.8    Tax Returns and Tax Information.** The General Partner shall cause the Partnership's federal, state and local tax return and other tax returns and reports, as may be required by the activities of the Partnership, to be prepared and timely filed, including IRS Form 1065, Schedule K-1. In addition, the Partnership shall provide the Partners with their IRS Form 1065, Schedule K-1 (and the state equivalent) in a timely manner (but in no event later than ninety (90) days after the close of each of the Partnership's Fiscal Year) and shall furnish a copy of the tax returns to any Partner who requests such returns.

**12.9    Redemption and Withdrawal of Preferred Limited Partner.**

(a)    The redemption of the Preferred Limited Partnership Interest of a Preferred Limited Partner for purposes of the SBIC Act shall not cause the withdrawal of such Preferred Limited Partner from the Partnership, and any Preferred Limited Partner whose Preferred Limited Partnership Interest is redeemed for purposes of the SBIC Act shall remain a Preferred Limited Partner of the Partnership notwithstanding such redemption, until such time as such Preferred Limited Partner is deemed to have withdrawn pursuant to paragraph 12.9(d).

(b)    In the event that any Preferred Limited Partner has not received on a cumulative basis an amount equal to 100% of the original issue price of such Preferred Limited Partner's Preferred Limited Partnership Interest in the Partnership, plus the amount of any Prioritized Payments and Adjustments that are due under the SBIC Act but unpaid with respect to such Preferred Limited Partner's Preferred Limited Partnership Interest, prior to the redemption date of such Preferred Limited Partner's Preferred Limited Partnership Interest for purposes of the SBIC Act, then on such redemption date, following allocation of Profit and Loss in accordance with Article 7, the Partnership shall distribute such amount to such Preferred Limited Partner as shall be required so that as of such date such Preferred Limited Partner shall have received on a cumulative basis an amount equal to the original issue price plus all Prioritized Payments and Adjustments which are due under the SBIC Act but unpaid with respect to its Preferred Limited Partnership Interest, or such lesser amount equal to the positive Capital Account balance, if any of such Preferred Limited Partner.

(c)    If, at the time any Preferred Limited Partner's Preferred Limited Partnership Interest has been redeemed for purposes of the SBIC Act, the Partnership (i) has not paid all Prioritized Payments and Adjustments in full and (ii) has not sold or otherwise disposed of all assets which are Earmarked Assets, then the Partnership's obligation to pay Prioritized Payments and Adjustments shall continue and payment shall be made as provided in this Agreement and the SBIC Act. The Partnership's obligation to pay Profit Participation with respect to Earmarked Assets shall continue until such time as all Earmarked Assets are disposed of. If on disposition of all Earmarked Assets there remain any Accumulated Prioritized Payments, the obligation to make such payments shall be extinguished.

(d)    A Preferred Limited Partner shall be deemed to have withdrawn from the Partnership at such time as the Preferred Limited Partnership Interest of such Preferred Limited Partner has been redeemed, the Partnership no longer owns any assets which are Earmarked Assets, and all amounts due from the Partnership to such Preferred Limited Partner with respect to its Preferred Limited Partnership Interest (including, without limitation, all allocated Profit Participation) have been paid to such Preferred Limited Partner or the obligation to pay such amounts has been extinguished as provided in paragraph 12.9(c).

13.    EXCULPATION AND INDEMNIFICATION. The indemnification provisions of Article 4 of SBA Annex OP are hereby incorporated by reference and attached hereto as Exhibit OP.

14.    AMENDMENT.

14.1    This Agreement may be amended only with the consent of the General Partner and the holders of a Majority in Interest of the Limited Partners; provided, however, that additional

General Partners shall not be admitted, nor shall Articles 4, 5, 7, 8, 11 or this proviso be amended so as to adversely affect any Limited Partner or Limited Partners in a manner different from all Limited Partners without the consent of a Majority in Interest of the Limited Partners so affected.

      **14.2**    Notwithstanding the foregoing, any amendment of the Agreement which would (i) affect the rights, obligations or liabilities of any Preferred Limited Partner or the SBA or (ii) reduce the Commitment of any Partner (other than as a result of (A) the operation of any provision of this Agreement, (B) an agreement, settlement, release or other action under a provision of the Agreement taken as provided in paragraph 5.5(b) or (C) the assignment of such Partner's interest in the Partnership as permitted under this Agreement) shall require the prior written consent of the SBA.

**15.**    NOTICES.  Any notice, demand or other communications required or proper hereunder shall be in writing, sent by federal express, facsimile, registered or certified mail, postage prepaid, as follows:

      **15.1**    To the Partnership or General Partner at 3945 Freedom Circle, Suite 740, Santa Clara, California 95054.

      **15.2**    To any Limited Partner as its address or facsimile number shall then appear on official records of the Partnership as kept and maintained by the General Partner.

Any party hereto may change the place to which notice may be given by notice as herein provided. All notices shall be deemed effectively given (i) upon personal delivery, (ii) three (3) days after deposit in any United States mail box, by registered or certified mail, postage prepaid, (iii) upon confirmed transmission by facsimile, or (iv) upon confirmed delivery by overnight commercial courier service.

**16.**    TAX STATUS.  The General Partner shall, and shall cause its partners, employees, and agents to, use best efforts to cause the Partnership to be classified and treated as a partnership, and not as an association taxable as a corporation, for federal income tax purposes, provided, however, that nothing contained in this paragraph 16 shall require the General Partner or any of its partners, employees, or agents, as the case may be, to apply for any rulings from the Internal Revenue Service, to litigate any claim that the Partnership is not a partnership for federal income tax purposes, to increase its Capital Contribution, or to seek an amendment to this Agreement.

      **16.1**    **Avoidance of Trade or Business Status.**  Except to the extent inconsistent with its obligations under this Agreement, the General Partner will use its best efforts to conduct the affairs of the Partnership so to avoid having the Partnership treated as engaged in a trade or business within the United States for purposes of Section 875, 882, 884, and 1446 of the Code. The General Partner shall not cause the Partnership to invest in any other partnership (or limited liability company or other entity taxed as a partnership) unless such entity agrees to use its best efforts to conduct its activities in a manner such that those activities will not cause the Partnership to be engaged in a trade or business within the United States. In no event shall the General Partner be liable for monetary damages resulting from or arising out of its breach of this paragraph 16.1. In no event shall this paragraph or any other provision in this Agreement be

interpreted as preventing (or limiting in any respect) the General Partner or the members of the General Partner from taking an active role in or receiving compensation for founding or serving of the boards of directors of companies.

### 16.2    Foreign Partners.

(a)    A Foreign Limited Partner is (i) any Limited Partner who is, or which is, not a "United States person" as defined in Code Section 7701(a)(30) or (ii) any person or entity which is not a United States person as defined in Code Section 7701(a)(30) and which owns more than fifty percent (50%) of the partnership capital of a domestic partnership, as defined in Code Sections 7701(a)(2) and 7701(a)(4), that is a Limited Partner.

(b)    If any Foreign Limited Partner shall obtain a materially unqualified opinion of counsel to the effect that there is either a present or future likelihood of (i) tax liability under Section 882 or 884 of the Code to the Foreign Limited Partner with respect to its share of Partnership Net Income or Capital Transaction Gains or (ii) required tax withholding by the Partnership under Section 1446 of the Code on distributions to the Foreign Limited Partner, the General Partner agrees to negotiate in good faith with the Foreign Limited Partner as to how the Foreign Limited Partner's interest in the Partnership may be restructured to minimize the adverse tax impact to the Foreign Limited Partner; provided, however, that any such restructuring shall be subject to SBA approval to the extent required under the SBIC Act.

(c)    Except to the extent inconsistent with its obligations under this Agreement, the General Partner will use its best efforts to conduct the affairs of the Partnership so that income generated by the investment of surplus cash of the Partnership will not be subject to withholding tax under Section 1441 of the Code.

17.    TAX MATTERS PARTNER. Except as otherwise required by law, the General Partner shall be the Tax Matters Partner ("TMP") under Section 6231(a)(7) of the Code, shall provide all information necessary under Section 6223(a) of the Code to have each Limited Partner classified as a notice partner under Section 6231(a)(8) of the Code, and shall promptly notify the Limited Partners if any tax return or report of the Partnership is audited or if any adjustments are proposed by an governmental body. In addition, the TMP shall promptly furnish to the Limited Partners all notices concerning administrative or judicial proceedings relating to federal income tax matters as required under the Code. During the pendency of any such administrative or judicial proceedings, the TMP shall furnish to the Limited Partners periodic reports, not less often than quarterly, concerning the status of any such proceedings. The TMP shall employ experienced tax counsel and advisors to represent the Partnership in connection with any audit or investigation of the Partnership by the taxing authorities and in connection with all subsequent administrative and judicial proceedings arising out of such audit. The fees and expenses of such, and all expenses incurred by the TMP in serving as the TMP, shall be Partnership expenses pursuant to paragraph 6.6(b) and shall be paid by the Partnership. The relationship of the TMP to the Limited Partners is that of a fiduciary who has an obligation to perform its duties in such a manner as will serve the best interest of the Partnership and its Limited Partners. To the fullest extent permitted by law, the Partnership agrees to indemnify the TMP and its agents and save and hold them harmless, from and in respect to all reasonable fees, costs, and expenses in connection

with or resulting from any claim, action, or demand against the TMP, the General Partner or the Partnership that arise out of or in any way relate to the TMP's status as TMP for the Partnership. The TMP shall have the right to resign by giving thirty (30) days' written notice to the Limited Partners. Upon the resignation, dissolution or bankruptcy of the TMP, a successor TMP shall be elected by Two-Thirds in Interest of the Limited Partners.

18.    **POWER OF ATTORNEY.** Each of the Limited Partners does hereby constitute and appoint the General Partner its true and lawful agent and attorney in fact with full power and authority to execute, verify, acknowledge, file, record, publish and deliver any document or documents deemed necessary or desirable by the General Partner in connection with the filing or recording or publication of any certificate, applications, statements or other documents under the Act or the limited partnership law of any other state or under any similar statute or law or any state necessitated by the creation of this Partnership and any amendment or other change in this Agreement. Further, the General Partner shall have the power under this Article 18 to institute such changes to this Agreement as may be required by the SBA in connection with its consideration of the Partnership's application for licensing by the SBA as a small business investment company.

19.    **ARBITRATION.** Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in Palo Alto, California, in accordance with the rules of the American Arbitration Association as such rules may be modified therein. An award rendered in connection with an arbitration pursuant to this paragraph may be entered in any court having jurisdiction thereof. The arbitrator or arbitrators shall be bound by the Federal Rules of Evidence and the procedural rules, including discovery provisions, of the Federal Rules of Civil Procedure. Notwithstanding the foregoing, the SBA shall not be bound by this paragraph 19 and any dispute under this Agreement involving the SBA shall be adjudicated in any court having competent jurisdiction thereover.

20.    **RATIFICATION AND APPROVAL.** The undersigned Limited Partners hereby ratify and approve all actions taken by the Partnership and the General Partner in connection with the negotiation and execution of the AAA Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP for DOTCOM Ventures, L.P., a California limited partnership, in several counterparts, each of which shall be deemed an original, as of the day and year first above written.

GENERAL PARTNER:                          LIMITED PARTNERS:

DOTCOM INVESTMENTS, LLC

                                          _____
                                                  Print Name

By: _____               By: _____
    Sada Chidambaram, Manager
                                          Title: _____
By: _____
    Stephen Hyndman, Manager


DOTCOM VENTURES, L.P.
AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP
SIGNATURE PAGE

IN WITNESS WHEREOF the undersigned have hereunto executed this instrument as of

_____.

PARTNERSHIP:                          PREFERRED LIMITED PARTNER:

**DOTCOM Ventures, L.P.**

By: DOTCOM Investments, LLC,          _____
its General Partner                   By:_____

By: _____             Title:_____
      Signature of Manager