1  ARLENE P. MESSINGER
   Assistant General Counsel for SBIC Enforcement
2  U.S. Small Business Administration
   Receiver for Prospero Ventures, L.P.
3  409 Third Street, S.W., 7th Floor
   Washington, DC  20416
4  Telephone: (202) 205-6857
   Facsimile: (202) 481-0325
5
   DARRYL J. HOROWITT  #100898
6  CHRISTINE J. LEVIN  #192181
   COLEMAN & HOROWITT, LLP
7  Attorneys at Law
   499 West Shaw, Suite 116
8  Fresno, California 93704
   Telephone: (559) 248-4820
9  Facsimile: (559) 248-4830

10 Attorneys for Plaintiff,
   U.S. SMALL BUSINESS ADMINISTRATION,
11 as Receiver for PROSPERO VENTURES, L.P.

12

13                 UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15

16 U.S. SMALL BUSINESS                    NO.   C 07-03736 VRW
   ADMINISTRATION, as Receiver for        **Related Cases:**
   PROSPERO VENTURES, L.P.,               C 07-03732, C 07-03733, C 07-03735,
17                                         C 07-03737, C 07-03738,C 07-03739,
                    Plaintiff,            C 07-03740, C 07-03741
18
          v.                             **MEMORANDUM OF POINTS AND**
19                                        **AUTHORITIES IN SUPPORT OF**
   JARRAT ENTERPRISES,                    **MOTION TO STRIKE**
20                                        **AFFIRMATIVE DEFENSES (FRCP**
                    Defendant.            **12(f)) OR, ALTERNATIVELY,**
21                                        **MOTION FOR JUDGMENT ON THE**
                                          **PLEADINGS [FRCP 12(c)]**
22
                                         [Filed concurrently with Notice of Motion
23                                        and Motion]

24                                        Date: May 8, 2008
                                          Time: 2:30 p.m.
25                                        Ctrm: 6, 17th Floor

26                                        Date Complaint Filed: July 19, 2007
                                          Trial Date: Not yet set
27

28 ///

# TABLE OF CONTENTS

**Page #**

INTRODUCTION .................................................... 2

FACTUAL SUMMARY ................................................ 2

    A. The Parties ................................................. 2

    B. The Limited Partnership Agreement ........................... 3

    C. The Failure of PROSPERO .................................. 4

    D. The Receivership .......................................... 4

DISCUSSION ...................................................... 5

    1. A Motion to Strike May be Brought to Strike Defendant's Affirmative Defenses
       As They are Legally Insufficient ........................................ 5

    2. None of the Affirmative Defenses May be Raised Because They Assert Claims
       That the SBA in its Agency Capacity or as a Special Limited Partner of
       PROSPERO is Responsible in Whole or in Part for Plaintiff's Damages.  None
       Of the Affirmative Defenses State a Claim Against the SBA as the Court-
       Appointed Receiver for PROSPERO ....................................... 7

    3. The Individual Affirmative Defenses are Deficient .......................... 9

        A. Opportunity to Cure ................................................ 9

        B. Bad Faith ....................................................... 10

        C. Estoppel ........................................................ 11

        D. Breach of Fiduciary Duty .......................................... 13

        E. SBA Regulations are Invalid for Failure to Further the Purpose of the SBIC 13

        F. SBA Regulations are Vague, Ambiguous and Unenforceable Under the
           Due Process Clause of the United States ........................... 14

        G. Failure to Mitigate ............................................... 15

        H. Ultra Vires ...................................................... 15

CONCLUSION ..................................................... 16

# TABLE OF AUTHORITIES

**Page #**

Cases

*ANA Small Business Investments, Inc. v. Small Business Administration,*
  391 F.2d 739 (9th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Austad v. U.S.* (1967) 386 F.2d 147 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bailey v. Outdoor Media Group* (2007) 155 Cal.App.4th 778 . . . . . . . . . . . . . . . . . . . . . . . 12

*Buckhannon & Northern R. R. Co. v. Davis,* (1905) 135 Fed. 707 . . . . . . . . . . . . . . . . . . . . . 8

*Cotta v. City and County of San Francisco* (2007) 157 Cal.App.4th 1550 . . . . . . . . . . . . . . 12

*Eddy v. Lafayette* (1986) 163 U.S. 456 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42 . . . . . . . . . . . . . . . . . . . 11

*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*General Elec. Co. v. Superior Court* (1955) 45 Cal.2d 897 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Germo Mfg. Co. v. McClellan* (1930) 107 Cal.App. 532 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Harm v. Frasher* (1960) 181 Cal.App.2d 405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Heher & Brennan,* 2006 WL 237511 (E.D. Pa 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Hernstadt v. Programs for Television, Inc.,* 36 Misc.2d 628, 232 N.Y.S.2d 683 (1962) . . . . . . 14

*Kaiser & Chemical Sales, Inc. v. Avondale Shipyards, Inc.* (5th Cir. 1982) 677 F.2d 1045 . . . . . 6

*Kelly v. Kosuga* (1959) 358 U.S. 516 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970 . . . . . . . . . . . . . . 11

*Lazar v. Trans Union LLC* (C.D.Cal., 2000) 195 F.R.D. 665 . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9

*Ledbetter v. Farmers Bank & Trust Co.,* (1944) 142 F.2d 147 . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*LeDuc v. Kentucky Central Like Ins. Co.* (ND CA 1992) 814 F.Supp. 820 . . . . . . . . . . . . . . . . . 6

*London v. Marco* (1951) 103 Cal.App. 450 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Luckenback v. Laer* (1923) 212 P. 918, 920 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Munoz v. State of California* (1995) 33 Cal.App.4th 1767 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Oregon Laborers-Employers Trust Funds v. Pacific Fence & Wire Co.* (D OR 1989)
  726 F.Supp. 786 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rogers v. McDorman* (C.A.5. (Tex.) --- F.3d ----, 2008 WL 711872 . . . . . . . . . . 9, 13, 14, 15, 16

*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752. . . . . . . . . . . . 10

*State of Oklahoma v. State of Texas* (1924) 265 U.S. 490 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006)
    143 Cal.App.4th 1036 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*U.S. Small Bus. Admin. v. Smith Stratton et. al*, 2006, WL 23 7511 . . . . . . . . . . . . . . . . . . . . . 8, 9

*U.S. v. Acorn Technology* (2005) 429 F.3d 438 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*U.S. v. Coleman Capital Corp.* (D.C.Ill. 1969.) 295 F.Supp. 1016 . . . . . . . . . . . . . . . . . . . . . . 14

*U.S. v. Jones* (C.A. 10. Colo) 254 Fed. Appx. 711, 2007 WL 3302441 . . . . . . . . . . . . . . . . . . . 12

*U.S. v. Union Gas Co.* (E.D.Pa., 1990) 743 F.Supp. 1144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States of America v. Prospero Ventures, L.P.*, Case No. C 04-4351 SBA . . . . . . . . . . . . 2

*United States v. 416.81 Acres of Land* (7th Cir. 1975) 514 F.2d 627 . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. 729.773 Acres of Land* (D HI 1982) 531 F.Supp. 967 . . . . . . . . . . . . . . . . . . . . 6

*United States v. Gaubert* (1991) 499 U.S. 315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Williams v. Jader Fuel Co., Inc.* (7th Cir. 1991) 944 F.2d 1388 . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wolitarsky v. Blue Cross of California* (1997) 53 Cal.App.4th 338 . . . . . . . . . . . . . . . . . . . . . . 12

*Woodfield v. Bowman*, 193 F.3d 354 (5th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 13-16

*Wyman v. Wyman* (9 Cir. 1967) 109 F.2d 473 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statutes

13 C.F.R. § 107.1140 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

13 C.F.R. § 107.1910 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13 C.F.R. § 107.200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13 C.F.R. § 107.500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

13 C.F.R. § 17.1820 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. §§ 661-697g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 2680 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C.A. § 959, subdivision (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

FRCP 12 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11, 13-16

FRCP 12 (f) ................................................................ 9-11, 13-16

FRCP 8(c) ................................................................ 9, 10, 11, 13-16

§ 301(c) of the Act, 15 U.S.C. § 681(c) ................................................ 3

Other

Sherman AntiTrust Act ................................................................ 10

1  ARLENE P. MESSINGER
   Assistant General Counsel for SBIC Enforcement
2  U.S. Small Business Administration
   Receiver for Prospero Ventures, L.P.
3  409 Third Street, S.W., 7th Floor
   Washington, DC 20416
4  Telephone: (202) 205-6857
   Facsimile: (202) 481-0325
5
   DARRYL J. HOROWITT #100898
6  CHRISTINE J. LEVIN #192181
   COLEMAN & HOROWITT, LLP
7  Attorneys at Law
   499 West Shaw, Suite 116
8  Fresno, California 93704
   Telephone: (559) 248-4820
9  Facsimile: (559) 248-4830

10 Attorneys for Plaintiff,
   U.S. SMALL BUSINESS ADMINISTRATION,
11 as Receiver for PROSPERO VENTURES, L.P.

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15
   U.S. SMALL BUSINESS                    NO.    C 07-03736 VRW
16 ADMINISTRATION, as Receiver for        **Related Cases:**
   PROSPERO VENTURES, L.P.,               C 07-03732, C 07-03733, C 07-03735,
17                                        C 07-03737, C 07-03738,C 07-03739,
                    Plaintiff,            C 07-03740, C 07-03741
18
          v.                             **MEMORANDUM OF POINTS AND**
19                                       **AUTHORITIES IN SUPPORT OF**
   JARRAT ENTERPRISES,                   **MOTION TO STRIKE**
20                                       **AFFIRMATIVE DEFENSES (FRCP**
                    Defendant.           **12(f)) OR, ALTERNATIVELY,**
21                                       **MOTION FOR JUDGMENT ON THE**
                                         **PLEADINGS [FRCP 12(c)]**
22
                                         [Filed concurrently with Notice of Motion
23                                       and Motion]

24                                       Date: May 8, 2008
                                         Time: 2:30 p.m.
25                                       Ctrm: 6, 17th Floor

26                                       Date Complaint Filed: July 19, 2007
                                         Trial Date: Not yet set
27

28 ///

                                     1

1    Plaintiff submits the following Memorandum of Points and Authorities in support of its

2    motion to strike JARRAT ENTERPRISES' ("JARRAT") affirmative defenses, or in the

3    alternative, judgment on the pleadings, as to the sole cause of action alleged herein.

4    **INTRODUCTION**

5    This is an action to recover unpaid capital contributions due by JARRAT to PROSPERO

6    VENTURES, L.P ("PROSPERO"), a small business investment company in receivership, in which

7    JARRAT was an investor and limited partner.  JARRAT contends that because of actions taken by

8    the United States Small Business Administration ("SBA") as an agency, in its capacity as a "special

9    limited partner" (as the term is used in Prospero's Limited Partnership Agreement) and in its capacity

10   as the regulator of PROSPERO, it may raise as affirmative defenses against the SBA, as the Receiver

11   for Prospero appointed by Order of this Court, the prior conduct of the SBA in its agency capacity.

12   The law is clear in receivership cases that JARRAT *may not* raise affirmative defenses against the

13   SBA as Receiver the conduct of the SBA in its agency or limited partner capacities, prior to the time

14   the receivership was established by this Court.

15   Because all of the affirmative defenses raised by JARRAT are barred, Plaintiff brings this

16   motion.

17   **FACTUAL SUMMARY**

18   **A.    The Parties.**

19   The U.S. SMALL BUSINESS ADMINISTRATION ("SBA") is an Agency of the United

20   States of America, with its principal offices at 409 Third Street, S.W., Washington, DC 20416.  (See

21   Complaint attached as Exhibit "1" to Request to Take Judicial Notice ("RJN") and filed concurrently

22   herewith,  ¶ 3; See Answer attached hereto as Exhibit "2" to RJN, ¶ 3.)  The SBA was appointed

23   Receiver ("Receiver") for PROSPERO pursuant to the <u>Order Granting Receivership and Permanent</u>

24   <u>Injunctive Relief</u> entered by Judge Saundra Brown Armstrong of this Court on October 20, 2004 in

25   *United States of America v. Prospero Ventures, L.P.*, Case No. C 04-4351 SBA.  (See Order attached

26   as Exhibit "4" to the RJN.)

27   ///

28   ///

2

1    PROSPERO is a California Limited Partnership. (Complaint, ¶ 4; Answer, ¶ 4.) It

2    maintained its last principal office and principal place of business at 870 Market Street, Suite 1040,

3    San Francisco, California 94102, within this District. (*Ibid.*) On September 29, 1999, PROSPERO

4    (formerly known as Dotcom Ventures, L.P., formerly known as ASCII Ventures, L.P.) was licensed

5    by SBA as a small business investment company ("SBIC") pursuant to § 301(c) of the Act, 15 U.S.C.

6    § 681(c), solely to do business under the provisions of the Act and the regulations promulgated

7    thereunder. (*Ibid.*)

8    JARRAT is a limited partner of PROSPERO. (Complaint, ¶ 5; Answer, ¶ 5.) Its office is

9    located in Henderson, Nevada. (*Ibid.*)

10   **B.    The Limited Partnership Agreement.**

11   On or about April 1, 1999, each Defendant entered into a limited partnership agreement with

12   PROSPERO (hereinafter "the Prior Agreement"). (Complaint, ¶ 6; Answer, ¶ 6.) JARRAT

13   thereafter entered into an "Amended & Restated Agreement of Limited Partnership for Dotcom

14   Ventures, L.P. (formerly ASCII Ventures, L.P.) a California Limited Partnership," now known as

15   PROSPERO, dated September 10, 1999, which amended the Prior Agreement (hereinafter "the

16   Agreement"). (Complaint, ¶ 7; Exhibit "A" to Complaint; Answer, ¶ 7.) JARRAT acknowledges

17   that it agreed to contribute $124,752.38 and acknowledges that it has actually contributed only one-

18   half, or $62,376.24. (See RJN, Exh. "3" Joint Case Management Statement, ¶ 1.)

19   At the time JARRAT signed the AGREEMENT, it expressly agreed to be bound by the SBA

20   Regulations and agreed to take all actions which the SBA may require in Paragraph 2.4 of the

21   AGREEMENT. (Complaint, ¶ 9; Answer ¶ 9 [document speaks for itself].) JARRAT, by entering

22   into the agreement, specifically agreed to contribute capital when called to do so *within fifteen (15)*

23   *days after written notice.* (See Exhibit "A" to Complaint; admitted in Answer, ¶ 7.)

24   By way of the AGREEMENT, JARRAT agreed to the following:

25   •      The SBA was to be a third party beneficiary under the Act. (See Exhibit "A" to
            Complaint, § 2.3.)
26
27   •      The provisions of the Act applied. (See Exhibit "A" to Complaint, § 2.4.) This
            includes 13 C.F.R. § 107.1140, which provides:

28   ///

3

1

2

3

"If you issue Leverage after April 25, 1994, you automatically agree to the terms and conditions in Sec. 107.1800 through 107.1820 as they exist at the time of issuance. The effect of these terms and conditions is the same as if they were fully incorporated in the terms of your Leverage."

4

5

6

7

8

• "in addition to the rights of the SBA under this Agreement in the SBA's capacity as a Preferred Limited Partner, the SBA also has regulatory authority over the Partnership as a licensed small business investment company under the provisions of the SBIC Act. The partners further acknowledge that the SBA exercises its regulatory authority over the Partnership under the SBIC Act independent and separate from its rights and actions in its capacity as Preferred Limited Partner. Actions taken by the SBA pursuant to such regulatory authority shall not be deemed to be actions taken in the SBA's capacity as a Preferred Limited Partner of the Partnership." (Exhibit "A" to Complaint, § 6.5.)

9

10

11

• "Each Limited Partner's Capital Commitment shall be contributed in cash installments as specified by the General Partner upon fifteen (15) days' prior written notice. No Limited Partner shall be required to make capital contributions in excess of such Limited Partner's Capital Commitment." (Exhibit "A" to Complaint, § 5.5 (a).)

12

13

14

15

16

17

• That the provisions of the SBA Annex PS then in effect were incorporated by reference into the AGREEMENT. (Exhibit "A" to Complaint, § 2.5.) The SBA Annex PS dated March 15, 1997, provided that should demand be made on a limited partner to make his/her/its capital contribution, the limited partner had no *"right to delay, reduce or offset any capital contribution obligation to the Partnership called under this Section 7.1 by reason of any counterclaim or right to offset by such Partner or the Partnership against SBA or any Preferred Limited Partner."* (See § 7.1(c) of SBA Annex PS Version 1.3.) (Emphasis added.) Section 5.7(c) of the AGREEMENT contains virtually identical language. (See attachment to Exhibit "A" to Complaint.)

18

**C.    The Failure of PROSPERO.**

19

        Pursuant to 13 C.F.R. § 17.1820, the SBA placed PROSPERO into restricted operations.

20

This required PROSPERO to cure its capital impairment if it intended to continue its licensed

21

operations.

22

**D.    The Receivership.**

23

        JARRAT admitted that on or about November 10, 2004, Plaintiff notified it that PROSPERO

24

had been placed into Receivership and that the SBA was appointed as the Receiver on October 18,

25

2004. (Complaint ¶12, Answer ¶ 12.) A copy of the Order was enclosed with the letter. (*Ibid.*)

26

///

27

///

28

4

1   The Order stated that PROSPERO *consented* to the Receivership. (See Order, ¶ 12 attached

2   as Exh. "4" to RJN.) The Order also stated that "[t]he Receiver [was] appointed for the purpose of

3   marshaling and liquidating in an orderly manner *all of Prospero's assets and satisfying the claims*

4   *of creditors* therefrom in the order of priority as determined by this Court." (See Order, ¶ 1 attached

5   as Exh. "4" to RJN.) The Receiver was mandated "pursue and preserve all claims." (*Ibid.*)

6   JARRAT admitted that on May 9, 2005, Plaintiff demanded payment of JARRAT's unfunded

7   capital commitment. (Complaint ¶ 13; Answer, ¶ 13; Joint Case Management Statement attached

8   as Exh. "4" to RJN.) When payment was not received, Plaintiff filed its Complaint seeking to

9   recover JARRAT's unfunded capital contributions.

10  ## DISCUSSION

11  **1.    A MOTION TO STRIKE MAY BE BROUGHT TO STRIKE DEFENDANT'S
        AFFIRMATIVE DEFENSES AS THEY ARE LEGALLY INSUFFICIENT**

12

13  Motions to strike serve the useful purpose of "eliminating insufficient defenses and saving

14  the time and expense which would otherwise be spent in litigating issues that would not affect the

15  outcome of the case." (*U.S. v. Union Gas Co.* (E.D.Pa., 1990) 743 F.Supp. 1144, 1150.) The Court

16  has "broad discretion in disposing of motions to strike." (*Ibid.*)

17  A plaintiff may challenge the legal sufficiency of the defenses pleaded in the answer at any

18  time. (*Oregon Laborers-Employers Trust Funds v. Pacific Fence & Wire Co.* (D OR 1989) 726

19  F.Supp. 786, 788; *Williams v. Jader Fuel Co., Inc.* (7th Cir. 1991) 944 F.2d 1388, 1399.) No notice

20  or hearing on the matter is required. (*United States v. 416.81 Acres of Land* (7th Cir. 1975) 514 F.2d

21  627, 630.) Motions to strike are properly granted when the subject matter can have no possible

22  bearing on the subject matter of litigation. (*Lazar v. Trans Union LLC* (C.D.Cal., 2000) 195 F.R.D.

23  665.)

24  The reasons that motions to strike may sometimes be "disfavored" are not present here. First,

25  motions to strike can be used as a delay tactic. (*U.S. v. Union Gas Co.* (E.D.Pa., 1990) 743 F.Supp.

26  1144, 1150.) Plaintiff's intention to file the instant motion to strike was stated at the Case

27  Management Conference and a date for hearing on the matter was reserved.

28  ///

5

1    Motions to strike may also be disfavored based on the public policy of resolving issues on

2    the merits. When a defense is insufficient as a matter of law, the public policy of resolving an issue

3    on the merits is not implicated. (*Kaiser & Chemical Sales, Inc. v. Avondale Shipyards, Inc.* (5ᵗʰ Cir.

4    1982) 677 F.2d 1045, 1057 [motion to strike affirmative defense is properly granted where defendant

5    asserts, as a matter of law, the contract was intrinsically illegal under federal antitrust laws, where

6    the court found this defense to be legally invalid]; *United States v. 729.773 Acres of Land* (D HI

7    1982) 531 F.Supp. 967, 972 [motion to strike is properly granted as to affirmative defense of

8    landowner's that condemnation action on the ground that the government does not have the authority

9    to acquire property through the process of condemnation when the court found the government's

10   condemnation authority is established through statute].)

11   JARRAT has admitted each element of Plaintiff's claim:  JARRAT has admitted that it

12   entered into a contract, JARRAT has admitted that it agreed to provide additional capital if called

13   to do so, and JARRAT admitted that a capital call was made. (Answer, ¶¶ 7, 12, 13.) JARRAT has

14   admitted that it failed to pay despite demand. (RJN, Exh. "4.")  For the reasons that will be

15   discussed below, the motion to strike should properly be granted because "it is clear that the matter

16   to be stricken could have no possible bearing on the subject matter of the litigation." (*LeDuc v.*

17   *Kentucky Central Like Ins. Co.*(ND CA 1992) 814 F.Supp. 820, 830.)

18   Plaintiff alternatively seeks judgment on the pleadings. "After the pleadings are closed, but

19   within such time as not to delay the trial, any party may move for judgment on the pleadings."

20   (FRCP 12 (c).) For purposes of a motion for judgment on the pleadings, all allegations of fact of the

21   opposing party are accepted as true while the allegations of the moving party which have been denied

22   are taken as false. (*Austad v. U.S.* (1967) 386 F.2d 147, 149 citing *Wyman v. Wyman* (9th Cir. 1967)

23   109 F.2d 473, 474.)

24   ///

25   ///

26   ///

27   ///

28   ///

6

1   **2.    NONE OF THE AFFIRMATIVE DEFENSES MAY BE RAISED BECAUSE**
2   **THEY ASSERT CLAIMS THAT THE SBA IN ITS AGENCY CAPACITY OR AS**
    **A SPECIAL LIMITED PARTNER OF PROSPERO IS RESPONSIBLE IN**
3   **WHOLE OR IN PART FOR PLAINTIFF'S DAMAGES.  NONE OF THE**
    **AFFIRMATIVE DEFENSES STATE A CLAIM AGAINST THE SBA AS THE**
    **COURT-APPOINTED RECEIVER FOR PROSPERO**
4

5         Even viewing the pleading in the light most favorable to JARRAT, as Plaintiff must (see

6   *Lazar v. Trans Union LLC* (CD CA 2000) 195 F.R.D 665, 669), the heart of each of JARRAT's

7   affirmative defenses is that the SBA somehow failed in its capacity as a *regulator* which ultimately

8   caused PROSPERO to fail.  JARRAT asserts defenses which would be viable if only it could stand

9   in the shoes of PROSPERO (which it cannot) prior to the entry of the Receivership Order and prior

10  to appointment of the SBA as Receiver.

11        JARRAT may not raise defenses based on conduct that occurred prior to the Order appointing

12  the SBA as Receiver.  Except for the vague defenses (which could apply to conduct at any time), all

13  of the affirmative defenses attack purported actions and omissions on the part of the SBA in its

14  *regulatory capacity* prior to the order placing PROSPERO into Receivership.  Plaintiff submits that

15  JARRAT intends the vague affirmative defenses to apply to the time prior to the Receivership Order

16  and to the conduct of the SBA in its capacity of regulator and the conduct aimed at PROSPERO.

17        JARRAT raises eight affirmative defenses, namely:

18        1.    "Plaintiff breached the Implied Covenant of Good Faith and Fair Dealing, by among

19              other things, failing to provide Prospero an opportunity to cure." (Answer, 2:25-26.).

20        2.    "Plaintiff acted in bad faith and with unclean hands." (Answer, 3:2.)

21        3.    "Plaintiff is estopped from enforcing the contract because, among other reasons, it

22              took actions and made statements that were relied on by Prospero and defendant to

23              their detriment." (Answer, 3:4-5.)

24        4.    "Plaintiff breached its fiduciary duties." (Answer, 3:7.)

25        5.    "SBA regulations (13 C.F.R. § 107.500 et. seq.), which are incorporated into the

26              contract and which were relied on by SBA, are invalid because they do not further

27              the purpose of the SBIC statute (15 U.S.C. §§ 661-667g)". (Answer, 3:9-11.)

28  ///

7

1      6.     "SBA regulations are vague, ambiguous and unenforceable under the due process

2            clause of the United States Constitution." (Answer, 3:13-14.)

3      7.     "Plaintiff failed to mitigate its damages." (Answer, 3:16.)

4      8.     "Plaintiff's actions are ultra vires." (Answer, 3:18.)

5      Defenses in receivership actions are limited. (See 28 U.S.C.A. § 959, subdivision (a).) A

6 receiver is liable for its actions while managing the property. (*Ibid.*; see *Eddy v. Lafayette* (1986)

7 163 U.S. 456, 464.) A receiver cannot be sued for in respect of acts occurring prior to the

8 receivership. (*State of Oklahoma v. State of Texas* (1924) 265 U.S. 490, 492-493.) Receivers are

9 to be given maximum discretion in managing the property after the receivership has been established.

10 A cause of action against a receiver for discretionary actions prior to the receivership may not be

11 maintained. (*State of Oklahoma v. State of Texas* (1924) 265 U.S. 490, 492-493; see *Buckhannon*

12 *& Northern R. R. Co. v. Davis* (2005) 135 Fed. 707, 711.) Thus, each of JARRAT's affirmative

13 defenses relate to pre-Order conduct and should be stricken. (*Luckenback v. Laer* (1923) 212 P. 918,

14 920.)

15      Plaintiff submits that there are no claims of mis-management ***against the Receiver*** for its

16 management practices ***during the term of the Receivership***. (*Ledbetter v. Farmers Bank & Trust*

17 *Co.*, 142 F.2d 147, 149.) Rather, each of JARRAT's affirmative defenses focuses on a ***pre-Order***

18 ***contention*** that the SBA, as regulator, should have taken various actions that would have allowed

19 PROSPERO to avoid the Order.

20      The SBA's ***regulatory*** decisions are discretionary and cannot be challenged by JARRAT.

21 (See e.g., *U.S. Small Business Administration v. Smith, Stratton, Wise, Heher & Brennan*, 2006 WL

22 237511 (E.D. Pa 2006); citing *United States v. Gaubert* (1991) 499 U.S. 315, 322.) It is well settled

23 that any claim or defense that may have existed is barred by the discretionary function exception to

24 the Tort Claims Act. (See 28 U.S.C. § 2680.) Under this exception, an administrative agency is not

25 liable for:

26            "Any claim based upon an act or omission of an employee of the
Government, exercising due care, in the execution of a statute or
27            regulation, whether or not such statute or regulation be valid, or based
upon the exercise or performance or the failure to exercise or perform
28            a discretionary function or duty on the part of a federal agency or an

8

1                       employee of the Government, whether or not the discretion involved
be abused."

2

3        This has long been held to serve as a bar to actions against public entities based on a party's

4 reliance on the conduct and statements of the SBA or those acting on its behalf as such defenses

5 relate to elements of judgment or choice. (*U.S. Small Bus. Admin. v. Smith Stratton et. al,* 2006, WL

6 23 7511.)

7        For the reasons stated above, each affirmative defense discussed above should be stricken

8 (FRCP 12 (f)), or, in the alternative, judgment in favor of Plaintiff entered. (FRCP 12 (c).)

9    **3.**    **THE INDIVIDUAL AFFIRMATIVE DEFENSES ARE DEFICIENT**

10        A defendant must "plead an affirmative defense with enough specificity or factual

11 particularity to give the plaintiff 'fair notice' of the defense that is being advanced." (*Rogers v.*

12 *McDorman* (C.A.5. (Tex.) --- F.3d ----, 2008 WL 711872; FRCP 8(c); see also *Woodfield v.*

13 *Bowman*, 193 F.3d 354, 362 (5th Cir.1999).) The affirmative defenses, as plead, do not provide

14 sufficient notice of the affirmative defense being alleged.

15    **A.**    **Opportunity To Cure.**

16        Assuming the truth of the sole fact alleged in JARRAT's first affirmative defense, that the

17 SBA "fail[ed] to provide PROSPERO an opportunity to cure," this affirmative defense should be

18 stricken. (Answer, 2:26; *Kelly v. Kosuga* (1959) 358 U.S. 516; *Lazar v. Trans Union LLC* (CD CA

19 2000) 195 F.R.D 665, 669) [facts taken as true].) The only point in time during which an

20 opportunity to cure could have been provided was ***prior*** to the Receivership Order. Whether or not

21 PROSPERO was given an opportunity to cure its capital impairment ***prior to the Order for***

22 ***Receivership*** cannot impact this litigation because the Receiver is not liable for actions that occurred

23 prior to the Order of Receivership. (*Eddy v. Lafayette, supra,* 163 U.S. at p. 464; *Ledbetter v.*

24 *Farmers Bank & Trust Co.*, (1944) 142 F.2d at p. 149; *State of Oklahoma v. State of Texas, supra,*

25 265 U.S. at p. 493.)

26        A receiver is merely the minister of a corporation acting at the direction of the Court in an

27 attempt to enforce liabilities. (*Luckenback v. Laer* (1923) 212 P. 918, 920.) Individuals have no

28 standing to object to proceedings "resulting in the original orders" because they were not parties

9

1    thereto. (*Ibid.*)  JARRAT has no standing to object to any conduct of the SBA in its regulatory

2    capacity prior to Order of Receivership. (*Ibid.*)  Further, PROSPERO consented to the Receivership

3    and thereby impliedly agreed to the terms. (See ¶ 12 of Order attached to RJN.)

4         Assuming "among other things" refers to conduct that occurred during the term of the

5    Receivership, the covenant of good faith and fair dealing is implied in every contract. (*Foley v.*

6    *Interactive Data Corp.* (1988) 47 Cal.3d 654, 683; *Harm v. Frasher* (1960) 181 Cal.App.2d 405,

7    417.)  The implied covenant requires "that neither party do anything which will deprive the other of

8    the benefits of the agreement" (*Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36

9    Cal.3d 752, 768), and its breach ordinarily gives rise to contract remedies (*ibid.*). (*Nedlloyd Lines*

10   *B.V. v. Superior Court* (1992) 3 Cal.4th 459, 477-478, parallel citations omitted.)  Here, JARRAT

11   provides no factual support for its position that the Receiver has done anything to deprive it of the

12   benefit of its bargain.  JARRAT states ***no fact*** to support its ***conclusion*** that Plaintiff acted in bad

13   faith and with unclean hands.  (See FRCP 8(c).)  *Kelly v. Kosuga* (1959) 358 U.S. 516, 517, 520

14   [district court properly struck defense that contract violated Sherman AntiTrust Act].)

15        For each of these reasons, this claim should be stricken (FRCP 12 (f)), or, in the alternative,

16   judgment on the favor of Plaintiff granted on the pleadings entered. (FRCP 12 (c).)

17   **B.    Bad Faith.**

18        JARRAT contends, in total, as its second affirmative defense: "Plaintiff acted in bad faith

19   and with unclean hands." (Answer, p. 3.)  This defense is insufficiently plead to give Plaintiff fair

20   notice of the defense being advanced. (See FRCP 8(c); *Woodfield v. Bowman*, 193 F.3d at p. 362

21   (5th Cir.1999).)  No facts are pleaded; rather, JARRAT states only its conclusion.

22        Pursuant to 13 C.F.R. § 107.200 et seq., the actions of the SBA are ministerial.  The SBA's

23   regulatory framework expressly precludes JARRAT here from asserting a defense based on estoppel

24   or waiver based on the SBA's failure to act in any particular manner. (See 13 C.F.R. § 107.1910

25   ["SBA's failure to exercise or delay in exercising any right or remedy under the Act or the

26   regulations in this part does not constitute a waiver of such right or remedy"].)  Based on the above,

27   ***any defense*** based on the notion that the SBA is liable because it either acted in some particular

28   unstated fashion or refused to act in some particular unstated fashion may not be maintained.

1    The doctrine of unclean hands is a doctrine that, *in equity*, may bar recovery if the Plaintiff's

2    hands are unclean. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 56.)

3    Equitable defenses should not be applied to purely contractual relationship. (*Stop Loss Ins. Brokers,*

4    *Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1044 [equitable remedies not

5    available in cross-complaint on contract].) JARRAT, a sophisticated investor, entered into a contract

6    with express provisions. (See Exhibit "B" to Complaint.) JARRAT provides no analysis as to why

7    this Court should depart from the rule barring equitable defenses from simple breach of contract.

8    JARRAT must demonstrate "unconscionable, bad faith, or inequitable conduct by the

9    Plaintiff in connection with the matter in controversy. [citation.]" (*Fladeboe v. American Isuzu*

10   *Motors Inc., supra,* 150 Cal.App.4th at p. 56 citing *General Elec. Co. v. Superior Court* (1955) 45

11   Cal.2d 897, 899-900.) JARRAT must allege *facts* establishing that Plaintiff's wrongful conduct *in*

12   *the same transaction,* i.e., "unclean hands" could be alleged as a bar to equitable relief. (See

13   *London v. Marco* (1951) 103 Cal.App. 450, 453; *Germo Mfg. Co. v. McClellan* (1930) 107 Cal.App.

14   532, 541.) "The [unclean hands] doctrine demands that a plaintiff act fairly in the matter for which

15   he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be

16   denied relief, regardless of the merits of his claim." (*Ibid.* citing *Kendall-Jackson Winery, Ltd. v.*

17   *Superior Court* (1999) 76 Cal.App.4th 970, 978.) JARRAT's defense is thus barred as a matter of

18   law, and may not be asserted here. For these reasons, this claim should be stricken (FRCP 12 (f)),

19   or, in the alternative, judgment in favor of Plaintiff entered. (FRCP 12 (c).)

20   **C.    Estoppel.**

21   JARRAT alleges, in total, as his third affirmative defense that: "Plaintiff is estoped from

22   enforcing the contract because, among other reasons, it took actions and made statements that were

23   relied on by *Prospero* and defendant to their detriment." (Answer, ¶ 3, emphasis added.) No

24   specific facts are pleaded; rather, JARRAT states that Plaintiff took "actions" and made

25   "statements." This defense is insufficiently plead to give Plaintiff fair notice of the defense being

26   advanced. (See FRCP 8(c); *Woodfield v. Bowman,* 193 F.3d at p. 362 (5th Cir.1999).)

27   ///

28   ///

11

1    The only period of time in which PROSPERO would have relied on a statement made by the

2    Plaintiff would have been before the Receivership Order; thus, this defense is moot. Furthermore,

3    PROSPERO consented to the Receivership and thereby agreed to the terms. (See Consent Decree

4    attached to Complaint as "C.")

5    Additionally, equitable estoppel is an equitable remedy, so should not be applied to what is

6    purely contractual relationship. (*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group,*

7    *supra,* 143 Cal.App.4th at p. 1044 [equitable remedies not available in cross-complaint on contract].)

8    JARRAT, a sophisticated investor, entered into a contract with express provisions. (See Exhibit

9    "B.")    Equitable estoppel, simply stated, arises whenever a party has, by his own statement or

10    conduct, intentionally and deliberately led another to believe a particular thing true and to act upon

11    such belief. In any litigation arising out of such statement or conduct, the party is not permitted to

12    contradict it. (See *Bailey v. Outdoor Media Group* (2007) 155 Cal.App.4th 778, 790.) Estoppel

13    against the government is disfavored and will not be applied unless doing so would both (1) frustrate

14    the purpose of the statute expressing the will of Congress or (2) unduly undermine the enforcement

15    of the public laws. (*U.S. v. Jones* (C.A. 10. Colo) 254 Fed. Appx. 711, 2007 WL 3302441.) As

16    neither exceptions is present here, there is no reason to depart from the well established presumption

17    against allowing a claim of estoppel against the government. (*Ibid.*)

18    The required elements for an equitable estoppel are: (1) the party to be estopped must be

19    apprised of the facts; (2) the party to be estopped must intend his or her conduct shall be acted upon,

20    or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the

21    other party must be ignorant of the true state of facts; and (4) the other party must rely upon the

22    conduct to his or her injury." (*Cotta v. City and County of San Francisco* (2007) 157 Cal.App.4th

23    1550, 1567 citing *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1785; *Wolitarsky v.*

24    *Blue Cross of California* (1997) 53 Cal.App.4th 338, 345.) JARRAT states (1) *no fact* of which the

25    Plaintiff was aware; (2) no fact that Plaintiff intended to be acted upon; (3) nothing of which it

26    (JARRAT) was unaware of the true facts; and (4) no fact or conduct of Plaintiff that it relied on to

27    its detriment. In sum, JARRAT has set forth *no factual basis* for the defense of detrimental reliance,

28    also referred to as estoppel.

12

1    For all of the aforementioned reasons, this affirmative defense should be stricken (FRCP

2    12(f)), or, in the alternative, judgment in favor of the Plaintiff entered. (FRCP 12(c).)

3    **D.    Breach of Fiduciary Duty.**

4    JARRAT contends, as its fourth affirmative defense, in total, that: "Plaintiff breached its

5    fiduciary duty." (Answer p. 3.) This affirmative defenses is not pleaded factually as is required.

6    (*Rogers v. McDorman* (C.A.5. (Tex.) --- F.3d ----, 2008 WL 711872; FRCP 8(c); see also

7    *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999).) Here, JARRAT does not state what

8    fiduciary duty was breached nor does JARRAT set forth any factual basis for a breach. JARRAT

9    fails to explain how the Plaintiff violated its fiduciary duty to it.

10    Assuming that this claim can be construed as a contention that the SBA, as a preferred

11    limited partner, breached purported fiduciary duties owed toward limited partners, this argument

12    has been rejected by the Third Circuit which explained that an individual *may not* assert a claim

13    against the SBA because such claims are "without merit as a matter of law." (*U.S. v. Acorn*

14    *Technology* (2005) 429 F.3d 438, 444.) In *Acorn*, the SBA was purported to have inside

15    knowledge that the individuals were looting and mismanaging the company, but the SBA failed

16    to inform other investors which led to the allegation of the breach of the fiduciary duty. (*Ibid.*)

17    *Acorn* held that the SBA does not have a fiduciary duty to limited partners. (*Id.*, n. 4.)

18    For all of the aforementioned reasons, this affirmative defense should be stricken (FRCP

19    12(f)), or, in the alternative, judgment in favor of the Plaintiff entered. (FRCP 12(c).)

20    **E.    SBA Regulations Are Invalid For Failure to Further the Purpose of the SBIC.**

21    JARRAT contends in total, as his fifth affirmative defense that "SBA regulations (13 C.F.R.

22    § 107.500 et. seq.), which are incorporated into the contract and which were relied on by SBA, are

23    invalid because they do not further the purpose of the SBIC statute (15 U.S.C. §§ 661-697g)." This

24    affirmative defense is vague and ambiguous. Plaintiff cannot ascertain what portion of the 13 C.F.R.

25    107.500 et. seq. JARRAT contends are vague, nor can Plaintiff ascertain what purpose of the SBIC

26    statute JARRAT claims is thereby not furthered by the application of the statute. (*Rogers v.*

27    *McDorman* (C.A.5. (Tex.) --- F.3d ----, 2008 WL 711872; FRCP 8(c); see also *Woodfield v.*

28    *Bowman*, 193 F.3d 354, 362 (5th Cir.1999).)

13

1    Assuming, for the sake of argument, that JARRAT could point to a portion of 13 C.F.R.

2    17.500 et. seq. that does not further the purpose of the SBIC regulations, JARRAT provides no

3    analysis or rationale explaining how this acts as an excuse or justification (in other words an

4    affirmative defense) to JARRAT's obligations to perform under the contract.

5    The parties here included a severability clause which was included to insure that the contract

6    would continue to be binding even if part of it was found to be invalid. (See 12.4 ["Whenever

7    possible, the provisions of this Agreement shall be interpreted in such manner as to be effective and

8    valid under applicable law, but *if any provision of this Agreement* shall be unenforceable or invalid

9    under said applicable law, such provision shall be ineffective *only to the extent of such*

10   *unenforceability or invalidity, and the remaining provisions of this Agreement* shall continue to

11   be binding and in full force and effect.")  Here, the parties included language ensuring that they

12   would be bound to the agreement even if a portion was found to be invalid.

13   Furthermore:

14           "It has been well established that S.B.A. regulations have the force
             and effect of law. *Hernstadt v. Programs for Television, Inc.*, 36
15           Misc.2d 628, 232 N.Y.S.2d 683 (1962). A licensee under a scheme
             of federal regulation acquires no vested rights which immunize it
16           from reasonable regulation by an administrative agency. *ANA Small
             Business Investments, Inc. v. Small Business Administration* [, 391
17           F.2d 739, 743 (9th Cir. 1968)]." (*U.S. v. Coleman Capital Corp.*
             (D.C.Ill. 1969.) 295 F.Supp. 1016, 1020.)
18

19   For these reasons, this affirmative defense should be stricken (FRCP 12(f)) or, in the

20   alternative, judgment on the pleadings entered. (FRCP 12(c).)

21   F.    **SBA Regulations Are Vague, Ambiguous and Unenforceable Under the Due Process
            Clause of the United States.**
22

23   JARRAT contends, as his sixth affirmative defense, in total, that "SBA regulations are vague,

24   ambiguous and unenforceable under the due process clause of the United States Constitution."

25   (Answer, p. 3.)  This affirmative defenses is not pleaded factually as is required.  (*Rogers v.*

26   *McDorman* (C.A.5. (Tex.) --- F.3d ----, 2008 WL 711872; FRCP 8(c); see also *Woodfield v.*

27   *Bowman*, 193 F.3d 354, 362 (5th Cir.1999).)  There are numerous SBA regulations; from this

28   pleading, it is impossible to discern which regulations JARRAT contends are vague, ambiguous and

14

1  unenforceable. Accordingly, JARRAT's allegation which is in the form of a conclusion is too vague

2  to constitute a defense.

3  JARRAT does not explain how the validity of the regulations or the lack thereof act as a

4  justification or defense regarding his breach of contract. JARRAT admits that it entered into a

5  contract, admits that a capital call was made, and admits that it failed to pay when the demand was

6  made. (See Answer pp. 1-3) JARRAT does not explain how more specific SBA regulations or more

7  enforceable regulations would have changed anything. Thus, it has not presented a viable defense.

8  For these reasons, the affirmative defense should be stricken (FRCP 12 (f)), or judgment on

9  the pleadings entered. (FRCP (c).)

10 **G.  Failure to Mitigate.**

11 JARRAT contends, as its seventh affirmative defense, in total, that "Plaintiff failed to

12 mitigate its damages." (Answer, p. 3.) JARRAT does not set forth any facts explaining what actions

13 Plaintiff should have taken and when the Plaintiff should have taken action to mitigate its damages.

14 This affirmative defense should be stricken because it fails to give Plaintiff fair notice of the defense

15 that is being advanced. (*Rogers v. McDorman* (C.A.5. (Tex.) --- F.3d ----, 2008 WL 711872; FRCP

16 8(c); see also  *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999).) Accordingly, this

17 affirmative defense should be stricken (FRCP 12(f), or, in the alternative, judgment in favor of the

18 Plaintiff entered. (FRCP 12(c).)

19 Plaintiff believes (but from the pleading cannot be certain) that JARRAT will contend that

20 the SBA, prior to the Receivership Order, was required to take certain actions. As has been

21 discussed, JARRAT does not have the standing to assert pre-order defenses. Given the complete

22 lack of factual pleading, however, it is impossible to be certain of JARRAT's defense here.

23 **H.  Ultra Vires.**

24 JARRAT contends, as its eighth affirmative defense, in total, that "Plaintiff's actions

25 were ultra vires." (Answer, p. 3.) Defendant does not set forth any facts which actions Plaintiff

26 conducted that were outside of its scope of authority. Plaintiff believes (but from the pleading

27 cannot be certain) that JARRAT will contend that the SBA's actions prior to the Receivership

28 Order were the ultra vires actions. Given the complete lack of factual support, however, it is also

15

1    possible that JARRAT will contend that the Receiver acted outside of his authority during the

2    management of the Receivership. (See Answer, 3.) This affirmative defense should be stricken

3    because it fails to give Plaintiff fair notice of the defense that is being advanced. (*Rogers v.*

4    *McDorman* (C.A.5. (Tex.) --- F.3d ----, 2008 WL 711872; FRCP 8(c); see also *Woodfield v.*

5    *Bowman*, 193 F.3d 354, 362 (5th Cir.1999).) Accordingly, this affirmative defense should be

6    stricken (FRCP 12(f)), or, in the alternative, judgment in favor of the Plaintiff entered. (FRCP

7    12(c).)

8                                    **CONCLUSION**

9          For the foregoing reasons and in the interest of justice, Plaintiff respectfully requests that

10   this Court exercise its discretion and grant the motion to strike, or alternatively, enter judgment

11   on the pleadings in favor of the Plaintiff in order to eliminate the insufficient defenses and in

12   order to save the time and expense which would otherwise be spent in litigating over issues that

13   will have not have affect as to the outcome of the case.

14   Dated: April 3, 2008                    COLEMAN & HOROWITT, LLP

15

16                                           By:_____

17                                              CHRISTINE J. LEVIN
                                                Attorneys for Plaintiff,
18                                              U.S. SMALL BUSINESS
                                                ADMINISTRATION, as Receiver for
                                                PROSPERO VENTURES, L.P.

19

20

21

22

23

24

25

26

27

28

F:\CLIENTS\1875-USSBAProspero\01Prospero\Pldg\Jarrat\MPA Strike.wpd
4/3/08 ~ 3:15 pm

Memorandum of Points and Authorities

## PROOF OF SERVICE

I declare that I am a citizen of the United States of America and a resident of the County of Fresno. I am over the age of eighteen (18) years and not a party to the within action. My business address is 499 West Shaw, Suite 116, Fresno, California 93704.

On April 3, 2008, I served the foregoing document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE AFFIRMATIVE DEFENSES (FRCP 12(f)) OR, ALTERNATIVELY, MOTION FOR JUDGMENT ON THE PLEADINGS [FRCP 12(c)]** on the interested parties, addressed as stated on the attached service list.

[x]    BY MAIL - by placing [x] a true and correct copy [] the original thereof enclosed in a sealed envelope with postage thereon fully prepaid in the firm's outgoing mail. I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing. It is deposited with United States Postal Service on that same day in the ordinary course of business.

[x]    BY CALIFORNIA OVERNIGHT - by placing [x] a true and correct copy [] the original thereof enclosed in a sealed envelope for delivery via California Overnight next day delivery to the addressee noted above.

[]    BY HAND DELIVERY - by delivering by hand and leaving a true copy with the person and at the address shown above.

[]    BY FACSIMILE TRANSMISSION - by causing a true facsimile thereof to be electronically transmitted to the parties, by using their facsimile number indicated on the attached service list.

[]    STATE: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[x]    FEDERAL: I declare that I am employed in the office of a member of the bar of this court at whose direction service was made.

Executed on April 3, 2008, at Fresno, California.

Lisa R. Barr

1

## Service List

**Via Mail and Electronic Mail:**

Bruce A. Singal, Esq.
Donoghue Barrett & Singal, P.C.
One Beacon Street, Suite 1320
Boston, MA 02108-3113
E-Mail: bsingal@dbslawfirm.com

Attorneys for Defendants

**Via California Overnight:**

**Chambers Copies**

Hon. Hon. Vaughn R. Walker
U.S. District Court, Northern District
450 Golden Gate Avenue
17th Floor, Court Room 6
San Francisco, CA 94102

2